(43 P.3d 870)

No. 86,243

STATE OF KANSAS, *Appellee*, v. MARTYN O. PRICE, *Appellant*.

Opinion filed April 12, 2002.

*Roger L. Falk,* of Wichita, for appellant.

*Richard A. Olmstead,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before PIERRON, P.J., JOHNSON, J., and BUCHELE, S.J.

JOHNSON, J.: Martyn Price appeals his convictions of one count of aggravated sodomy and two counts of aggravated indecent liberties with a minor. We reverse and remand for a new trial.

The alleged victim is F.B., who is the stepdaughter of Price's stepson. Melissa is F.B.'s mother. F.B. has a stepbrother, L.B., who is 1 month older than F.B. Approximately once or twice a month, Price and his wife would babysit F.B. and her half brother (also L.B., but hereafter referred to as "half brother"). Often, the children would spend the night.

At the beginning of the 1999 school year, when F.B. was 7 years old, Melissa learned that one of F.B.'s friends was spreading a rumor that F.B. was having sex with a boy. Melissa confronted F.B., who became agitated and refused to discuss the issue in person. However, mother and daughter exchanged a series of letters in which F.B. described sexual activity with both her stepbrother, L.B., and Price.

F.B. revealed that one night some years earlier when F.B. could not sleep, she saw a sexually explicit program on cable television. Sometime later, she asked L.B. to lick her vaginal area and to rub his penis on her genitals. Approximately a month later, she approached Price about engaging in the same behavior. F.B. said Price was initially hesitant, but capitulated when she begged him. F.B. also asked to touch Price's penis, which he allowed. One morning in 1999, F.B. told Price she no longer wished to continue these acts; Price agreed, and the conduct ceased.

Price emphatically denies ever participating in any of the alleged acts. Price does admit F.B. approached him requesting that he kiss her genitals, but he claims he refused the request and told her that those actions would be wrong. Price initially said he would have to inform his wife. However, when F.B. became upset and worried that Melissa would discover what happened, Price agreed not to tell anyone in exchange for F.B.'s promise not to ask him again.

F.B.'s parents reported this activity to Social and Rehabilitation Services (SRS). Price was eventually charged, on an amended complaint, with one count of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1) and two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A). While F.B. had claimed she began this sexual activity as early as age 3 or 4, the information only charged acts which occurred while F.B. was 7 years old, *i.e.*, those occurring between December 19, 1998, and December 19, 1999.

The matter proceeded to a jury trial. Price was convicted on all three counts, and sentenced to a controlling term of 117 months' imprisonment. On appeal, Price attacks the following: (1) the denial of Price's motion for a bill of particulars; (2) the denial of Price's motion for an independent psychological examination of F.B.; (3) the granting of the State's motion in limine which prevented Price's expert from testifying; (4) the sustaining of the State's multiple objections to the introduction of Price's proffered good character evidence; and (5) the sufficiency of the evidence to support the convictions.

## BILL OF PARTICULARS

After the preliminary hearing but before trial, Price filed a motion for a bill of particulars. After a hearing before the Honorable Paul W. Clark, the district court determined the information, which alleged all of the required statutory elements, was adequate. Further, the court found that the matters to be litigated on the charged offenses had been adequately described in the testimony at the preliminary hearing and in other completed discovery. Price challenges this ruling on appeal, arguing the denial of his motion for a bill of particulars impaired his ability to prepare a defense.

"When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare a defense the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial, the state's evidence shall be confined to the particulars of the bill." K.S.A. 2001 Supp. 22-3201(f).

A bill of particulars serves two functions: to inform the defendant of the nature of the charges and the evidence against him or her,

thus enabling the defendant to prepare a defense, and to prevent further prosecution for the same offense. *State v. Myatt*, 237 Kan. 17, 29, 697 P.2d 836 (1985). We review the district court's denial of a motion for a bill of particulars for an abuse of discretion. A district court abuses its discretion when its actions are arbitrary, fanciful, or unreasonable; that is to say, when no reasonable person would take the view adopted by the district court. *State v. Young*, 26 Kan. App. 2d 680, 683, 11 P.3d 55 (1999).

The decision to require the prosecution to file a bill of particulars is generally discretionary with the trial court, except in such cases where the charging instrument itself is insufficient to inform the accused of the charges against which he or she must defend. *State v. Webber*, 260 Kan. 263, 284, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997). Price argues that, in this case, the district court was required to grant his motion for a bill of particulars because the complaint was too vague. Unfortunately, the amended complaint was not included in the record on appeal. However, even according to Price, each count alleged the elements of the charged offense, the victim, and the relevant time frame. The information presented in the charging document was sufficient to adequately inform Price of the filed charges against him. Thus, while doing so may have been appropriate in this case, the district court was not *required* to order the State to file a bill of particulars.

Price acknowledges that the State need not provide him with the exact dates and times the alleged offenses occurred. See *Myatt*, 237 Kan. at 28-29. However, Price's chief complaint seems to be that he was unable to formulate an alibi defense or show lack of opportunity to commit the alleged crimes. It is unclear how Price would have been able to use such defenses without the benefit of knowing the exact dates and times the alleged incidents took place, information the State was simply not required to provide.

Price further argues he was not adequately informed of the "manner of means" by which these crimes were allegedly committed. In count one, Price was charged with aggravated criminal sodomy for engaging in oral contact with F.B.'s genitalia. In count two, Price was charged with aggravated indecent liberties for lewdly fondling or touching F.B. At the preliminary hearing, the

prosecutor clarified that this charge was based on Price rubbing his penis on F.B.'s vagina. In count three, Price was charged with aggravated indecent liberties for inducing F.B. to lewdly touch or fondle him. Again, the prosecutor clarified at the preliminary hearing that this charge was based on Price allowing F.B. to fondle his penis.

At the preliminary hearing, F.B. testified in a fair amount of detail about her sexual contact with Price. She described the last time Price placed his mouth on her genitals, when she was 7 years old. This occurred when F.B. and her half brother were spending the night at the Prices, after the half brother fell asleep. F.B. also described what she was wearing. Later in her testimony, F.B. claimed that during the same, final incident, she touched Price's penis. F.B. also recounted another incident, when she was age 7, during which Price touched her genitals with his penis. The preliminary hearing testimony sufficiently informed Price of F.B.'s allegations.

The charging document, together with the evidence presented at the preliminary hearing and obtained through discovery, provided Price with sufficient information to defend the charges against him. We cannot say that the district court abused its discretion in denying Price's motion for a bill of particulars. See *Webber*, 260 Kan. at 284.

Finally, Price takes issue with the State's failure to make a pretrial election of which of the multiple acts described by F.B. it intended to submit to the jury. In multiple acts cases, the State must elect the particular criminal act upon which it will rely for conviction or the trial court must instruct the jury that each member must agree that the same underlying criminal act has been proven beyond a reasonable doubt. See *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994). Price notes that the State was in as good a position to select which acts it would rely upon before trial as it was during trial. Further, had the district court granted his motion for a bill of particulars, the State would have been limited to presenting evidence of only those acts specified in the bill of particulars, and Price could have filed a motion in limine to exclude testimony of any other alleged acts. While this point has

logical appeal, Kansas law does not require the State to make a pretrial election of the acts upon which it intends to rely. Rather, the State "at some point" must elect the incidents for which adequate proof has been presented or the jury must be given a unanimity instruction. *Crutcher v. State*, 27 Kan. App. 2d 674, 675, 8 P.3d 1 (1999).

## *INDEPENDENT PSYCHOLOGICAL EXAMINATION OF VICTIM*

Price's motion for an independent psychological examination of F.B. set forth several factors in support of the motion, namely: F.B.'s initial disclosure of the abuse was in writing; F.B. admitted to prior sexual contact with her stepbrother; and, in F.B.'s letters to her mother, F.B. referred to herself as a liar. In overruling the motion, the Honorable Tom Malone determined that no compelling reason existed to justify ordering such an examination. Specifically, Judge Malone found that Price had not demonstrated that F.B. suffered from any mental or emotional problems, that F.B.'s story was corroborated by some evidence, and that the inconsistencies in F.B.'s various renditions of the events was not unusual. We review the district court's ruling on this matter for an abuse of discretion. *State v. Rucker*, 267 Kan. 816, 821, 987 P.2d 1080 (1999).

A trial judge has the discretion to order a psychiatric evaluation of the complaining witness in a sex crime case if the defendant presents a compelling reason for such an examination. *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). The district court does not abuse its discretion in denying a motion for a psychiatric examination of the victim witness where there is no evidence of mental instability, lack of veracity, similar charges against other men which were proven false, or any other reason why the particular victim should be required to submit to such an examination. 226 Kan. at 490. Corroborating evidence of the victim's claims has also been cited as one factor supporting a denial of a motion for a psychiatric examination. See *Rucker*, 267 Kan. at 821-22. On the other hand, we have found that the district court abused its discretion in denying a motion for a psychiatric evaluation where the

defendant presented evidence that the victim was mentally unstable, made a recent charge that her father molested her, mutilated kittens, and had a tendency to soil herself. See *State v. Bourassa*, 28 Kan. App. 2d 161, 166, 15 P.3d 835 (1999).

Here, Price presented direct evidence calling F.B.'s veracity into question. In one of the letters F.B. exchanged with her mother, she wrote:

"I asked [Price] to lick my privates after the movies I watched. He did. Now I was three or four. I told you not face to face [meaning she did not want to discuss the matter in person]. I lie sometimes and I am a big lying ratty big old pig. I ask God very much to help me. I have bad problems with lying. I need help and I ask [stepbrother L.B.] at the same time."

The State points out that F.B. later explained the "liar" comments referred to her lying to her friend. This is the same friend, however, in whom F.B. confided that she was having sex with a boy and who subsequently spread the rumors to that effect. Interestingly, the trial judge did not comment at all on the issue of F.B.'s veracity in ruling on Price's motion.

The State argues these statements weigh only on F.B.'s credibility, which is an issue for the jury, not the district court. This argument misses the point. Ordering a psychological evaluation based on the victim's veracity is a separate issue and does not constitute improper comment by the district court on her credibility.

The judge also relied in part on the existence of corroborating evidence in denying Price's motion. A review of the record, however, indicates that F.B.'s claims about Price are not corroborated by any evidence at all. The judge noted that the letters F.B. exchanged with her mother and F.B.'s relationship with "the other children," presumably stepbrother L.B., provided "some corroboration," although he admitted this evidence was somewhat limited. F.B.'s prior consistent statements hardly constitute corroborating evidence. Moreover, the evidence is undisputed that the alleged acts committed by Price occurred after F.B. engaged in sexual activity with L.B. Thus, it is difficult to see how such evidence corroborates F.B.'s allegations against Price.

F.B.'s own statements concerning her lack of veracity and the absence of corroborating evidence constituted sufficiently com-

pelling reasons for F.B. to be evaluated. Further, we note F.B.'s testimony reveals her willingness to participate in the various sex acts and suggests she felt very much in control of the relationship; she initiated and terminated the sexual activity. While this in no way mitigates the severity of Price's alleged criminal acts, such behavior is very unusual and certainly merits further investigation. See West, Children's Sexual Encounters with Adults, pp. 160-61 (1990). The motion was neither a fishing expedition nor a tactic designed to harass or intimidate F.B. See *Bourassa*, 28 Kan. App. 2d at 166-67.

We do not suggest that a psychological evaluation of the victim should become the normal procedure in child sexual abuse cases. District courts should be circumspect in deciding whether to subject child victims to any more trauma than is necessary. However, under the atypical facts of this case, there were compelling reasons to evaluate F.B., and the district court abused its discretion in denying Price's motion.

### *EXCLUSION OF DEFENDANT'S EXPERT WITNESS TESTIMONY*

Price argues next that the district court erred in granting the State's motion in limine, which prevented his expert witness from testifying at trial. The purpose of an order in limine is to assure all parties a fair and impartial trial by prohibiting inadmissible evidence, prejudicial statements, and improper questions by counsel. *Brunett v. Albrecht*, 248 Kan. 634, 638, 810 P.2d 276 (1991). A motion in limine should be granted if the material or evidence in question is inadmissible under the rules of evidence and the mere offer of this evidence or statements made concerning the material will tend to prejudice the jury. *State v. Galloway*, 268 Kan. 682, 690, 1 P.3d 844 (2000). We review a district court's decision on a motion in limine for an abuse of discretion. *State v. Humphrey*, 267 Kan. 45, 55, 978 P.2d 264 (1999).

Price sought to introduce the expert testimony of Dr. Howard Brodsky. There is apparently no dispute that Dr. Brodsky is qualified as an expert. At the hearing on the State's motion, over which the Honorable Joseph Bribiesca presided, defense counsel made a

detailed proffer of the expert testimony. Dr. Brodsky was to testify that after evaluating Price, he did not believe he exhibited characteristics typically found in sex offenders. Counsel specifically noted that he would not ask Dr. Brodsky for any opinion as to whether Price, or F.B., was telling the truth or whether he believed Price molested F.B., as such evidence is clearly inadmissible. See *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986); *State v. Lash*, 237 Kan. 384, 386, 699 P.2d 49 (1985). But see *State v. Arrington*, 251 Kan. 747, 753, 840 P.2d 477 (1992) (holding expert witness could testify that severely retarded child victim was incapable of being deliberately deceitful); *State v. Colwell*, 246 Kan. 382, 391, 790 P.2d 430 (1990) (holding State's expert witness could testify as to whether child victim was capable of distinguishing the truth from a lie).

Ironically, in making his ruling, Judge Bribiesca found it problematic that Dr. Brodsky had not interviewed F.B., even though Judge Malone had previously ruled that there was no compelling reason to justify ordering a psychological examination of F.B. The judge reasoned that any comment on whether F.B. exhibited symptoms of rape trauma syndrome would be inadmissible unless the State planned on presenting such evidence, which it did not. In sum, Judge Bribiesca found that Dr. Brodsky's testimony would improperly comment on the truthfulness of the witness or whether the victim was molested. Defense counsel then asked Judge Bribiesca to clarify his ruling as to whether Dr. Brodsky could testify about whether Price exhibited characteristics prevalent in child molesters. The judge ruled Dr. Brodsky could not testify at all, as there was no authority permitting such evidence.

The basis for the admission of expert testimony is necessity arising from the particular circumstances of the case. To be admissible, expert testimony must be helpful to the jury. An expert's opinion, pursuant to K.S.A. 60-456, is admissible up to the point where an expression of opinion would require him to pass on the credibility of a witness or the weight of disputed evidence. The admissibility of expert testimony lies within the sound discretion of the district court. Such a determination will not be reversed on appeal absent an abuse of discretion. *Colwell*, 246 Kan. at 389.

On appeal, Price challenges the district court's ruling insofar as it prevented Dr. Brodsky from testifying as to whether Price exhibited a predilection toward children. In support of his argument, Price contends the State is permitted to introduce expert testimony on whether a victim's behavior is consistent with that found in other sex crime victims. See *State v. Clements*, 241 Kan. 77, 80, 734 P.2d 1096 (1987) (*Clements I*); see also *State v. Reser*, 244 Kan. 306, 308-09, 767 P.2d 1277 (1989) (holding expert testimony that victim exhibited some traits of post-traumatic stress disorder was admissible); *State v. McQuillen*, 236 Kan. 161, 171, 689 P.2d 822 (1984) (holding State could introduce evidence that victim exhibited symptoms of rape trauma syndrome). Therefore, to avoid an impermissible double standard, Price argues he should be permitted to present such evidence, also.

The State points to *State v. Clements*, 244 Kan. 411, 420, 770 P.2d 447 (1989) (*Clements II*), which found inadmissible State-proffered expert testimony concerning the treatability and psychology of sex offenders. However, the expert had never examined the defendant and only testified as to commonly exhibited characteristics of child molesters. The State, in closing argument, applied those characteristics to the defendant, effectively diagnosing defendant as a pedophile. The *Clements II* court concluded: "(1) [E]vidence which only describes the characteristics of the typical offender has no relevance to whether the defendant committed the crime in question; and (2) the only inference which can be drawn from such evidence, namely that a defendant who matches the profile must be guilty, is an impermissible one." 244 Kan. at 420. Here, in contrast, the proferred evidence was Dr. Brodsky's diagnosis of Price, following a personal evaluation.

Because it involves State-proffered testimony, *Clements II* is arguably not controlling in analyzing the issue of whether Price's expert witness was wrongfully barred from testifying. The admissibility of defense-proffered expert testimony on a criminal defendant's propensity for molesting children is apparently an issue of first impression in Kansas. The weight of authority in other states and in the federal courts is resoundingly in favor of excluding such evidence. See generally Annot., *Admissibility of Expert Testimony*

*as to Criminal Defendant's Propensity Toward Sexual Deviation,* 42 A.L.R. 4th 937.

The trial judge has broad discretion regarding the qualification of an expert witness and the admissibility of expert testimony. *State v. Smallwood,* 264 Kan. 69, 80, 955 P.2d 1209 (1998). The test set forth in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), applies where a new or experimental scientific technique is employed by an expert witness. *Frye* requires that the basis of an expert scientific opinion must be shown to be generally accepted as reliable within the expert's particular scientific field before it may be received into evidence. *State v. Canaan,* 265 Kan. 835, 848-49, 964 P.2d 681 (1998); see also *State v. Marks,* 231 Kan. 645, 654, 647 P.2d 1292 (1982) (holding psychiatric diagnosis of rape trauma syndrome admissible). The *Frye* test, however, does not apply to "pure opinion" testimony, *i.e.,* where an expert's opinion is developed from inductive reasoning based on his own experience, observation, or research. *Kuhn v. Sandoz Pharmaceuticals Corp.,* 270 Kan. 443, 456-57, 14 P.3d 1170 (2000).

Several states have excluded the type of evidence at issue in this case on the basis that it has not gained the necessary acceptance in the scientific community; therefore, *Frye* precludes its admission. See *State v. Person,* 564 A.2d 626, 631-32 (Conn. App. 1989); *State v. Floray,* 715 A.2d 855, 860-61 (Del. Super. 1997); *Tungate v. Com.,* 901 S.W.2d 41, 43-44 (Ky. 1995); *State v. Elbert,* 831 S.W.2d 646, 648 (Mo. App. 1992); *State v. Cavallo,* 443 A.2d 1020, 1026-29 (N.J. 1982); see also *U.S. v. Powers,* 59 F.3d 1460, 1472-73 (4th Cir. 1995) (examining such evidence under *Daubert v. Merrell Dow,* 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 [1993]). But see *U.S. v. Robinson,* 94 F. Supp. 2d 751, 752-55 (W.D. La. 2000) (finding evidence admissible under *Daubert*).

In ruling on the State's motion in limine, the trial judge determined that this evidence would improperly comment on Price's credibility. Some states have found expert testimony regarding a defendant's propensity for molesting children to be an improper comment on the credibility of the witnesses, thus invading the province of the jury. See *State v. Hulbert,* 481 N.W.2d 329, 333 (Iowa 1992); *State v. Fitzgerald,* 382 N.W.2d 892, 894-95 (Minn.

App. 1986); *State v. Friedrich*, 398 N.W.2d 763, 769-70 (Wis. 1987). Similarly, other states have determined that the proffered testimony merely constituted the expert's opinion of the defendant's character and was therefore inadmissible under the state's rules of evidence. See *Floray*, 715 A.2d at 859-60 (Del.); *State v. Ambrosia*, 587 N.E.2d 892, 899 (Ohio App. 1990); *Williams v. State*, 649 S.W.2d 693, 695-96 (Tex. App. 1983).

It is noteworthy that a few jurisdictions which do not allow defense-proffered evidence as to the defendant's proclivity for molesting children also do not allow the state to present evidence of rape trauma syndrome or similar afflictions suffered by the victim. See *Tungate*, 901 S.W.2d at 43 (Ky.); see also *State v. Tucker*, 798 P.2d 1349, 1355 (Ariz. App. 1990) (applying same evidentiary rule to both sex offenders and victims). It is well established in Kansas that the State may present such evidence of the victim's psychological infirmities. Nevertheless, it seems most jurisdictions allow the State to present expert testimony in support of its case while prohibiting the defense from doing the same. Whether this is necessarily a bad outcome is a separate question. See *Cavallo*, 443 A.2d at 1026 (noting the admission of proffered testimony by defense would inevitably lead to a "battle of the experts" and divert the attention of the jury).

California stands nearly alone in allowing a criminal defendant to present expert testimony regarding his or her capacity for sexual deviance. See *People v. Stoll*, 783 P.2d 698, 707 (Cal. 1989). However, California's rules of evidence specifically allow this type of testimony as character evidence. See Cal. Evid. Code § 1102 (West 1995). This statute essentially codified the California Supreme Court's earlier decision in *People v. Jones*, 266 P.2d 38 (Cal. 1954) (holding "lack of sexual deviance" is a relevant character trait in a sex crime case). Incidentally, evidence of rape trauma syndrome has been determined to be relevant by California courts but is inadmissible to prove that the victim was raped. *People v. Bledsoe*, 681 P.2d 291, 301 (Cal. 1984).

Apparently following *Jones*, Alaska courts have also found evidence of the defendant's lack of sexual deviance to be admissible. See *Freeman v. State*, 486 P.2d 967, 972 n.8 (Alaska 1971) (noting

that it appeared to be "uniformly accepted" that psychiatric evidence showing that an individual accused of sexually deviant misconduct is not a sexual psychopath should properly be regarded as character evidence). This statement has been routinely criticized as inaccurate, as the cases cited by the court, other than *Jones* and its progeny, were either not on point or contrary to the court's conclusion. See *Cavallo*, 443 A.2d at 1027 n.6; 42 A.L.R. at 947. Consequently, *Freeman* is of dubious precedential value.

Dr. Brodsky's testimony was based upon his experience, observations, and research, following a personal evaluation of Price. The Kansas Supreme Court has characterized this as "pure opinion" testimony, the validity of which is to be tested by cross-examination of the witness, not by inquiring into the expert's particular scientific field. *Kuhn*, 270 Kan. at 457. However, a majority of the panel believes our Supreme Court would extend the reasoning of *Clements II* to defense-proffered expert testimony and find that: (1) evidence that defendant lacks the characteristics of a typical offender is not relevant to whether defendant committed the crime in question; and (2) the only inference which can be drawn from such evidence, namely that the defendant who does not match the child sexual abuser profile must be innocent, is an impermissible one.

The district court was correct in finding there was no authority for admitting Dr. Brodsky's testimony, and, obviously, such a finding cannot be considered an abuse of discretion.

### EVIDENCE OF DEFENDANT'S GOOD CHARACTER

At trial, defense counsel attempted to elicit testimony from various character witnesses about specific instances of conduct where Price behaved appropriately around children. The district court sustained the State's objections to such questioning. We review the district court's ruling on the admission of character evidence for an abuse of discretion. *State v. Lewis*, 27 Kan. App. 2d 380, 384, 5 P.3d 531 (2000).

On appeal, Price argues this type of evidence is admissible. The following Kansas statutes are relevant in the determination of this issue:

"When a person's character or a trait of his or her character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of K.S.A. 60-447 and 60-448." K.S.A. 60-446.

"Subject to K.S.A. 60-448 when a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446, except that (a) evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible, and (b) in a criminal action evidence of a trait of an accused's character as tending to prove guilt or innocence of the offense charged, (i) may not be excluded by the judge under K.S.A. 60-445 if offered by the accused to prove innocence, and (ii) if offered by the prosecution to prove guilt, may be admitted only after the accused has introduced evidence of his or her good character." K.S.A. 60-447.

Price argues the evidence in question was admissible under K.S.A. 60-447(b). See *State v. Kuone*, 243 Kan. 218, 231, 757 P.2d 289 (1988).

In *Kuone*, the defendant was charged with indecent liberties with a child and aggravated criminal sodomy. At trial, the defendant sought to introduce the testimony of two character witnesses who would testify as to their opinions that the defendant did not have a propensity for violence and that he was a good citizen and law-abiding neighbor. The district court sustained the State's objection to this evidence, finding it was inadmissible and without probative value. The Kansas Supreme Court found the court's ruling to be in error and determined the evidence was admissible under K.S.A. 60-447(b). The court, however, ultimately determined that this error was harmless. The character trait at issue, the defendant's propensity for violence, did not prove his guilt or innocence because the State had not charged that the victim's resistance was overcome by force or fear. The proffered evidence only refuted a statement made by the victim, which was unnecessary to establish the charged offenses. *Kuone*, 243 Kan. at 229-32.

The court went on to note that an example of the type of character evidence that would be relevant in disproving the charges in that case would be that the "defendant had been around young girls frequently in situations where similar conduct could have occurred, but that the defendant had always behaved in an acceptable

manner." *Kuone*, 243 Kan. at 232-33. This is exactly the type of evidence Price sought to introduce.

K.S.A. 60-447 provides that if a character trait is relevant, evidence of specific instances which tend to prove that trait may be introduced in a criminal action if offered by the accused to prove his innocence. *State v. Sullivan & Sullivan*, 224 Kan. 110, 124, 578 P.2d 1108 (1978). Clearly the evidence here is admissible. The trial judge offered virtually no explanation for his rulings to the contrary.

The State argues that Price misconstrues 60-447 and *Kuone*. Citing 60-447(a), the State contends that "examples of specific instances of conduct *are inadmissible* except evidence of a conviction of a crime which is used to prove a character trait to be bad." This reading is somewhat skewed. The plain language of 60-447 provides that "when a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446." K.S.A. 60-447(a) is an exception to that general rule and provides that "evidence of specific instances of conduct other than evidence of a conviction of a crime which tends to prove the trait to be bad shall be inadmissible."

The key distinction here is whether the inadmissible evidence which "tends to prove the trait to be bad" is: (1) the evidence of specific instances of conduct; or, (2) evidence of a conviction of a crime. A set of commas would be very useful. The State asserts the inadmissible evidence is "specific instances of conduct," while the admissible evidence is "a conviction of a crime which tends to prove the trait to be bad." Price's interpretation renders inadmissible only "evidence of specific instances of conduct . . . which tends to prove the trait to be bad," but allows "evidence of a conviction of a crime."

Price's interpretation on 60-447(a) is the better one. See *State v. Gregory*, 218 Kan. 180, Syl. ¶ 6, 542 P.2d 1051 (1975) (offsetting "other than evidence of conviction of a crime" in parenthesis). It is difficult to imagine how evidence of a conviction of a crime would not prove the character trait at issue to be bad. Thus, the only logical interpretation is that the legislature meant to exclude only those specific instances of conduct which tend to prove the trait to

be bad. Because the character trait at issue here is a good trait, 60-447(a) is inapplicable.

The State cites *Herbstreith v. de Bakker*, 249 Kan. 67, 815 P.2d 102 (1991), in support of its interpretation. In that case, the court noted that "evidence of specific instances of conduct, not constituting a conviction of a crime, is inadmissible to prove a trait of a person's character." 249 Kan. at 77. However, in *Herbstreith*, a medical malpractice case, the evidence of specific instances of conduct was inadmissible because it tended to prove the trait—the defendant's prior restrictions or suspensions from practicing medicine—to be bad. 249 Kan. at 77. Thus, this case is not particularly helpful here.

Moreover, 60-447(b), which prohibits a judge from excluding evidence of a trait of an accused's character to prove innocence, does not exclude the use of specific instances of conduct. Given the court's reasoning in *Kuone*, it is clear that the type of evidence Price sought to introduce is admissible. The district court erred in sustaining the State's objections.

The remaining issue is whether Price is entitled to a new trial. Price contends the combined effect of the district court's erroneous evidentiary rulings gutted his defense. When we add the district court's refusal to allow Price to evaluate F.B., we believe a new trial is in order.

Cumulative trial errors, when considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule if the evidence against the defendant is overwhelming. *State v. Pham*, 27 Kan. App. 2d 996, 1006, 10 P.3d 780 (2000).

The evidence in this case was not overwhelming. There was virtually no evidence corroborating F.B.'s allegations. It is undisputed that F.B. acquired her advanced sexual knowledge from sources other than Price. Given the unusual facts of this case, expert testimony concerning F.B.'s psychology was needed to fully develop the issues at trial.

The series of erroneous and inconsistent rulings made by the various judges in the district court in favor of the State substantially impaired Price's ability to put on his defense and effectively served to deny him a fair trial. *Cf. State v. Bourassa*, 28 Kan. App. 2d 161, 172-73, 15 P.3d 835 (1999) (finding the "mechanistic legal approach of taking a snapshot of each pretrial ruling and assessing its impact under an abuse of discretion standard" failed to appreciate the devastating impact the district court's pretrial rulings had on the defendant's theory of the defense). Price is entitled to a new trial on a more level playing field.

## *SUFFICIENCY OF THE EVIDENCE*

Finally, Price argues his conviction was not supported by sufficient evidence. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000).

Price points out a number of inconsistencies in F.B.'s testimony. F.B. described more than one incident as the "first time" Price touched her inappropriately. F.B. also offered several different estimations on how many times the sexual abuse occurred, each of which was arguably an exaggeration. In addition, F.B. claimed that when Price would pull his penis out of the shorts he often wore, he would do so through the fly. As it turns out, these shorts did not have a fly. Price's chief complaint, however, is with F.B.'s description of the facts supporting the second count in the information, wherein he was accused of rubbing his penis on F.B.'s vaginal area. Price claims F.B.'s description is a physical impossibility.

The testimony of the prosecutrix alone can be sufficient to sustain a conviction without further corroboration if the evidence is clear and convincing and is not so incredible and improbable as to defy belief. *State v. Plunkett*, 261 Kan. 1024, 1033, 934 P.2d 113 (1997). The State presented evidence supporting each element of each charged offense. The inconsistencies were more than ade-

quately addressed by Price's counsel through cross-examination and the presentation of his defense.

Given F.B.'s age, the inconsistencies in her testimony do not render it so improbable as to defy belief. Rather, this issue hinges on the credibility of the witnesses, which is a matter solely within the province of the jury. On appellate review, we will not pass on the credibility of witnesses or weigh conflicting evidence. *State v. McCray*, 267 Kan. 339, 343, 979 P.2d 134 (1999). Price's insufficiency of the evidence argument fails.

Reversed and remanded for a new trial.