(56 P.3d 303)
No. 87,242

STATE OF KANSAS, *Appellee,* v. DAROLD R. SHOPTAW, *Appellant.*

Opinion filed September 20, 2002.

*Nathan B. Webb*, assistant appellate defender, and *Randall Hodgkinson*, deputy appellate defender, for appellant.

*Amy L. Harth*, assistant county attorney, *David L. Miller*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., MARQUARDT and BEIER, JJ.

GERNON, J.: Darold R. Shoptaw appeals his convictions of three counts of rape for engaging in sexual intercourse with his 13-year-old daughter, J.S.

Shoptaw raises three issues on appeal: (1) the omission of a multiple acts unanimity instruction, (2) the denial of discovery of or an in camera review of psychological records of the victim, and (3) the refusal of a request for a psychiatric examination of the victim.

The sad and sordid facts of this case involve Shoptaw's daughter, who was living at home with her father, her 20-year-old brother and his wife, and her 15-year-old brother. Her mother had moved out of the house.

Authorities were called to a middle school when J.S. came to school pregnant. After some investigation and after the delivery of a child, DNA tests concluded that neither of the two males J.S. had stated she had had sex with was the father of the child. It was then that she disclosed that she had had sex with her two brothers. One of the brothers was determined to be the father of the child.

J.S. testified that her father started touching her breasts when she was 11 years old. Her father showed her pornographic magazines and movies and asked her if she wanted to engage in the sex acts depicted. She performed oral sex on her father only one time, even though he asked her repeatedly to do so.

J.S. testified that the first time she and her father had engaged in sexual intercourse was a few months before her mother moved out. They usually had sex in her father's bedroom, although they had done it once in the living room. J.S. testified that she thought her father had engaged in sexual intercourse with her 3 to 10 times. Sometimes J.S. would approach her father for sex if he was not feeling well or was depressed because she thought it would make him happy. When she offered to have sex with her father, he would accept. J.S. never told anyone she was pregnant and denied it to her father when he asked if she was pregnant.

J.S. testified that her father had told her before they started having sex that she did not have to worry about getting pregnant because he had undergone a vasectomy. J.S. testified that her father had warned her that the first time they had sex it might hurt. J.S. stated that her father had been asking her for months to have sex with him before she agreed.

J.S. admitted that she would sometimes approach her brothers for sex. She testified that she started having sex with her eldest

brother when she was 12 years old, after her mother left the home. She started having sex with her 15-year-old brother around the same time, although she was not sure of the exact date.

Darold Shoptaw testified on his own behalf. Shoptaw denied ever engaging in sexual intercourse with J.S., touching her inappropriately, or fondling her.

## MULTIPLE ACTS UNANIMITY JURY INSTRUCTION

Shoptaw first argues that he was entitled to a multiple acts unanimity jury instruction at trial, claiming the district court's failure to include such an instruction was reversible error. He did not request such an instruction at trial, nor did he object to the instructions given.

"No party may assign as error the giving or failure to give an instruction, . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 2001 Supp. 22-3414(3).

"Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

In multiple acts cases, several acts are alleged, and any one of them could constitute the crime charged. In such a case, the jury must be unanimous as to which act constitutes the crime charged. *State v. Timley*, 255 Kan. 286, Syl. ¶ 2, 875 P.2d 242 (1994).

" 'To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. [Citations omitted.]' " *Timley*, 255 Kan. at 289-90.

The present case is a multiple acts case. Shoptaw was charged with three counts of rape, although J.S. testified that they had engaged in sexual intercourse 3 to 10 times.

The Kansas Supreme Court recently addressed the multiple acts jury unanimity question in *State v. Hill*, 271 Kan. 929, 26 P.3d

1267 (2001). *Hill* established the analysis for the failure to include a unanimity instruction as harmless error. As stated in *Hill*:

"In applying a harmless error analysis, the first step is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by a 'fresh impulse.' When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts." 271 Kan. at 939.

In *Hill*, the defendant gave a general denial to participation in two digital rapes of a young girl. The defendant was charged with one count of rape, although the victim testified that Hill had digitally raped her twice. "Hill did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act." 271 Kan. at 940.

We conclude that there is nothing in the record to support Shoptaw's argument that separate defenses were given to distinct factual charges. The cornerstone of Shoptaw's defense at trial was a general denial and a general allegation that J.S. was covering up for her brothers. If, as Shoptaw argues, J.S. only implicated her father to protect her brothers, such a defense applies generally to the allegations in the same way as the father's general denial that he ever engaged in sexual intercourse with his daughter.

There was no possibility of juror confusion. Either the jury believed J.S.'s testimony about engaging in sexual intercourse with her father, or it believed Shoptaw's unified defense to the charges that he had not engaged in sexual intercourse with his daughter and had been falsely accused.

This case was decided based on credibility of the witnesses. Like the situation in *Hill*, there is no rational basis by which the jury could have found that Shoptaw committed one rape but not the others. Any error in omitting a unanimity instruction was harmless.

## IN CAMERA REVIEW OF PSYCHOLOGICAL RECORDS

Shoptaw argues that the district court erred when it quashed his subpoena duces tecum issued to the Miami County Mental Health Center to obtain J.S.'s mental health records.

The defense attorney requested an in camera review by the judge or broader inspection of the records by the attorney. Shoptaw was unable to offer any evidence as to the potential relevance of the records. Rather, the records were requested to "give the defense an opportunity to consult with an expert to see if there is, in fact, a mental condition which would have something to do with the . . . case, which would have something to do with Mr. Shoptaw's right to a fair trial."

The Miami County Mental Health Center filed a motion to quash the subpoena based on the doctor-patient privilege of K.S.A. 65-5601 *et seq.*

K.S.A. 65-5602(a) contains the following language:

"A patient of a treatment facility has a privilege to prevent treatment personnel or ancillary personnel from disclosing . . . any confidential communications made for the purposes of diagnosis or treatment of the patient's mental, alcoholic, drug dependency or emotional condition. The privilege extends to individual, family or group therapy under the direction of the treatment personnel and includes members of the patient's family. The privilege may be claimed by the patient, by the patient's guardian or conservator or by the personal representative of a deceased patient. The treatment personnel shall claim the privilege on behalf of the patient unless the patient has made a written waiver of the privilege . . . ."

J.S.'s attorney exercised the privilege on her behalf.

According to the attorney who argued the motion to quash for the Miami County Mental Health Center, the records were the result of the brief treatment of J.S. in 1997, when she was 10 years old. He stated:

"I do know the—the nature of the contents of this, the file and I—I can say that, if they're looking for an evaluation, they will not find one because none was every [*sic*] completed. In fact, this was a very short term type of contact with the center back in 1997, and it was broken off by the family. It was not ordered by any court. It was the family, on their own, doing this. The nature of it, I don't know, and I don't know if it has any bearing on this particular matter, even."

The district judge ruled that none of 14 exceptions listed in K.S.A. 2001 Supp. 65-5603 applied to the facts of the case and quashed the subpoena of the mental health records. The trial court did not review the documents in camera before granting the motion to quash.

There are no Kansas cases dealing with the request for treatment records of a rape victim when the counseling occurred before, not after, the crime.

The United States Supreme Court dealt with the request for privileged records of a rape victim in *Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987). In 1979, Ritchie was charged with rape and other crimes after his 13-year-old daughter accused him of assaulting her two to three times a week for the previous 4 years. Ritchie subpoenaed the Children and Youth Services (CYS) records relating to the current allegations, as well as records from allegations investigated in 1978. The Court noted that while the records from 1978 were from a time when the daughter was allegedly being abused, it was undisputed that she did not disclose the abuse at the time.

CYS refused to comply with the subpoena, claiming that the records were privileged under state law. Ritchie argued that the records might disclose favorable witnesses, as well as other potentially exculpatory evidence. In addition, Ritchie hoped to obtain a 1978 medical report. CYS denied there was such a medical report in the records. The trial judge, acknowledging he had not read the entire CYS record, denied the motion to sanction CYS for failing to honor the subpoena and refused to order CYS to turn over the records.

The State of Pennsylvania argued that the trial court was not required to conduct an inquiry into the CYS records because the records were privileged by state statute. Noting there were exceptions to the privilege statute, the Court could not find whether the statute prevented all disclosures in the context of a criminal prosecution. Employing a due process analysis, the Supreme Court held that Ritchie was entitled to an in camera review of the CYS records by the trial court. The trial court was ordered to review the records to determine if they contained any information that "probably would have changed the outcome of his [Ritchie's] trial." If the trial court found any such information, then the Court ruled that Ritchie must be given a new trial. 480 U.S. at 57-58.

In *State v. Humphrey*, 217 Kan. 352, 537 P.2d 155 (1975), defendant Humphrey was charged with drug possession. The main

witness for the State was John Eckhart, a special agent to the attorney general. Humphrey subpoenaed the High Plains Comprehensive Community Mental Health Center in an attempt to gain access to Eckhart's records. Information had surfaced that Eckhart had been diagnosed by the center as a psychopath and pathological liar and had been diagnosed as schizophrenic at a Veterans Administration hospital. The defense wanted the records in order to discredit Eckhart's testimony at trial. After the trial court quashed the subpoena, Humphrey appealed, claiming he was denied his right to compulsory process.

The Kansas Supreme Court held that the trial court had improperly quashed the subpoena duces tecum because the holder of the privilege (Eckhart) had not exercised it and the physician-patient privilege of K.S.A. 60-427 only applied to civil actions and misdemeanors. The Supreme Court wrote that the proper procedure would have been to allow the defendant's attorney to examine Eckhart's records and offer them into evidence as to Eckhart's competence or credibility. At that point, the trial court could have ruled on the individual admissibility of the records. *Humphrey*, 217 Kan. at 363.

Shoptaw argues that *Humphrey* recognizes no physician-patient privilege under K.S.A. 60-427 in felony cases. However, we conclude that the present case does not involve K.S.A. 60-427.

J.S.'s claimed privilege to her mental health records is covered by K.S.A. 65-5602, the statutorily created privilege to patients of a treatment facility. Dicta from *State v. Berberich,* 267 Kan. 215, 978 P.2d 902 (1999), indicates the privilege would apply in felony cases.

"We deem it of great significance that a psychiatrist comes under K.S.A. 60-427(b) and, thus, would not have a privilege in a felony case. There appears to be a privilege to patients of a treatment facility (K.S.A. 65-5601 *et seq.*) that would include any employee of a treatment facility. *Thus, a psychiatrist's patients may have a privilege in felony cases in certain situations.* It would seem inconsistent to grant a greater privilege to counselors and psychologists than the privilege given to a psychiatrist." (Emphasis added.) 267 Kan. at 223.

The treatment records in the present case predate the allegations of abuse. The treatment occurred when J.S. was 10 years old, and she testified the abuse did not begin until a year later. Unlike the

situation in *Humphrey*, Shoptaw was unable to point to anything specific in the records that would be relevant to his case. The subpoena amounted to a request to "look and see" if there was anything helpful.

Here, it is impossible to say whether any of the information contained in J.S.'s record would have been material to Shoptaw's defense because no one involved in the case looked at the subpoenaed records.

We conclude that in order to adequately protect Shoptaw's constitutional rights, as well as J.S.'s interest in her privileged communications with the treatment facility, the record should be reviewed by the trial judge in camera to determine if there is any evidence that probably would have changed the outcome of the trial. If the trial judge finds such information, which is unlikely given what we know about the nature and the duration of the counseling, then Shoptaw would be entitled to a new trial.

## MOTION FOR A PSYCHIATRIC EXAMINATION OF THE VICTIM

Shoptaw's final argument is that the trial court abused its discretion in denying his request for a psychological evaluation of J.S.

The standard of review of a defendant's motion for a psychiatric examination of a complaining witness in a sex crime case is whether the trial court abused its discretion in denying such request. *State v. Rucker*, 267 Kan. 816, 821, 987 P.2d 1080 (1999). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

The standard for ordering a psychiatric examination of a rape victim in Kansas was established in *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979). The Kansas Supreme Court held that "a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination." 226 Kan. at 489.

*State v. Bourassa*, 28 Kan. App. 2d 161, 166-67, 15 P.3d 835 (1999), *rev. denied* 269 Kan. 934 (2000), held that the trial court abused its discretion when it refused to allow a psychiatric exami-

nation of an alleged 11-year-old victim after the defendant was able to proffer evidence of her mental instability including: a recent charge against her father of sexual molestation, kitten mutilation, soiling herself, the use of Prozac, and counseling for behavioral disorders.

A more recent case, *State v. Price*, 30 Kan. App. 2d 569, 43 P.3d 870 (2002), held that the trial court abused its discretion when it refused to allow a psychiatric evaluation of the 7-year-old alleged victim, F.B. The defendant's motion for a psychiatric examination included: F.B.'s initial disclosure of the abuse in writing, F.B.'s admission of prior sexual contact with her stepbrother, and F.B.'s reference to herself as a liar in letters to her mother. Noting that the facts of this case were atypical, the court ordered a new trial because "F.B.'s own statements concerning her lack of veracity and the absence of corroborating evidence constituted sufficiently compelling reasons for F.B. to be evaluated." 30 Kan. App. 2d at 575-76.

Here, Shoptaw argued that the psychiatric examination was required because J.S. was the sole witness, no physical evidence corroborated her claims of abuse, J.S.'s testimony was vague, J.S. had changed her story in relation to the dates of the abuse, and J.S. had recently experienced traumatic events in her life.

None of the factors claimed by Shoptaw at his motion for a psychiatric evaluation rise to the level of compelling evidence as required by *Gregg*. There was no evidence presented calling into question her mental veracity or ability to tell the truth as there was in *Price* and *Bourassa*. While J.S. admitted to a longer history of abuse over time than she had in the initial taped interview, this does not call into question her ability to tell the truth. In fact, all three of the other men she accused of engaging in sexual intercourse with her admitted to doing so.

The trial court did not abuse its discretion in denying Shoptaw's motion for a psychiatric examination.

Affirmed in part, reversed in part, and remanded with instructions that the trial court perform an in camera inspection of J.S.'s mental health records and, if there is any information in such files

which probably would have changed the outcome of the trial, then a new trial should be ordered.