(166 P.3d 1067)
No. 96,146

STATE OF KANSAS, *Appellee,* v. GARY R. ELROD, *Appellant.*

Opinion filed September 14, 2007.

*Jay Witt* and *Rachel Pickering,* of Kansas Appellate Defender Office, for appellant.

*Renee S. Henry,* assistant district attorney, *Jerome A. Gorman,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., McANANY, J., and BRAZIL, S.J.

MARQUARDT, J.: Gary R. Elrod appeals his convictions for two counts of criminal sodomy and two counts of indecent liberties with a child. We affirm.

D.T. has known her stepfather, Elrod, since 1998. D.T. testified that she had a "pretty good" relationship with Elrod. D.T. testified that after she turned 10, Elrod began to do inappropriate things, like asking her to sit on his lap, making suggestive remarks, and telling her that she looked "sexy."

According to D.T., when she was 12 years old, she accompanied her family to Missouri for a vacation. D.T. testified that she got a leg cramp while swimming and Elrod offered to rub her leg. As Elrod was rubbing her leg, he put his fingers in her vagina. D.T. alleged that during that same vacation, Elrod performed oral sex on her.

D.T. told her mother, who confronted Elrod. Elrod admitted that D.T.'s accusations were true. Later, Elrod testified that the incidents never happened and he only confessed because he loved his wife and thought they could work through D.T.'s problems if he admitted her accusations. D.T.'s mother asked D.T. if she wanted to report it to the police; D.T. declined.

D.T. testified that the routine she had with Elrod consisted of him manually and orally stimulating her. D.T. testified that Elrod had nicknames for her vagina and clitoris and when Elrod used the word "froggy," he wanted to "horseplay." Elrod admitted to using the term "frogging," but said it meant horseplay, tickling, punching, and "blowing raspberries."

D.T. testified that Elrod would remove her clothes, but he always remained fully clothed. She stated that he would fondle her breasts, buttocks, and vagina with his hand or mouth every day. D.T. testified that Elrod "blew raspberries" on her stomach, vagina, vaginal lips, breasts, and butt. She said that between 5 or 7 times, he put his finger in her vagina.

D.T. testified that the last incident with Elrod which occurred in October 2004 was different because Elrod seemed "more into it" and was enjoying it "way too much." She said that she was on her back and he was "playing with my vagina or blowing raspberries or something along those lines."

Eventually, one of D.T.'s friends asked her if she was being sexually abused. D.T. answered in the affirmative. The friend told D.T. to report it to an authority. D.T. told a school administrator who notified SRS. In November 2004, D.T. called SRS and attempted to recant her allegations. Later, D.T. testified that the abuse happened, but she tried to recant her allegations because she was "stressed and [she] was really sick of everything."

Elrod was charged with four counts of aggravated criminal sodomy, four counts of criminal sodomy, two counts of indecent liberties with a child, and one count of indecent solicitation of a child. A jury trial was held and at the close of the State's case, Elrod moved for a directed verdict. The trial court granted his motion as to two counts of aggravated criminal sodomy and one count of indecent solicitation of a child. Elrod was convicted of two counts of criminal sodomy and two counts of indecent liberties with a child. He received a controlling sentence of 61 months' imprisonment. Elrod appeals his convictions.

### Sufficiency of Evidence

Elrod claims that D.T. was only able to identify two dates for the crimes in question and one of those incidents occurred in Missouri. Elrod contends that there was insufficient evidence to prove criminal sodomy because "blowing raspberries" on D.T.'s vaginal area does not constitute criminal sodomy.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Kesselring,* 279 Kan. 671, 679, 112 P.3d 175 (2005).

K.S.A. 21-3505 criminalizes certain acts of sodomy, including those which occur with a child who is 14 or more years of age but less than 16 years of age. K.S.A. 21-3501(2) defines sodomy as "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal."

In *State v. Price,* 30 Kan. App. 2d 569, 43 P.3d 870 (2002), *rev'd on other grounds* 275 Kan. 78, 61 P.3d 676 (2003), a panel of this court concluded there was sufficient evidence to sustain the convictions for sodomy where the defendant had licked the victim's vaginal area. Defendant Price claimed there were inconsistencies in the victim's testimony and the evidence was insufficient to support his conviction. The court held that any inconsistency in testimony was best evaluated by the jury. 30 Kan. App. 2d at 585-86.

D.T. testified that the normal routine at her home with Elrod was that from 3:30 p.m. until 5:00 p.m. there would be fondling and oral sex. Elrod put his mouth on her vaginal area virtually every day that contact occurred.

K.S.A. 21-3501(2) only requires that there be oral contact with the female genitalia in order to satisfy the definition of sodomy; vaginal penetration is not required. There is sufficient evidence for a conviction of sodomy.

### Effect of the Amended Information on the Conviction

The information charging Elrod with two counts of indecent liberties with a child stated:

"At the County of Wyandotte, State of Kansas, for a further, different and ninth count Herein; Information reads between October 30, 2003, and October 14, 2004, Gary R. Elrod did unlawfully, knowingly, intentionally and feloniously engage in lewd fondling or touching of the person of a child, to wit: [D.T.] (DOB: 10-30-88), who was 15 years of age, with the intent to arouse or satisfy the sexual desires of the child, the offender or another, in violation of K.S.A. 21-3504."

After the jury returned its verdict, the State filed an amended information which included two counts of indecent liberties with a child, and which stated:

"At the County of Wyandotte, State of Kansas, for a further, different and third count· Herein; Information reads that on or about October 30th, 2003, defendant(s) Gary R. Elrod did unlawfully, knowingly, intentionally and feloniously soliciting [sic] a child, to-wit: D.T. (DOB: xx-xx-88), who was 15 years of age, to engage in any lewd fondling or touching of the offender, to-wit: Gary R. Elrod, with the intent to arouse or satisfy the sexual desires of the child, the offender or another, in violation of K.S.A. 21-3503."

On appeal, Elrod argues that there is no evidence he ever solicited D.T. to touch or fondle him. The original information never mentioned solicitation; instead it charged Elrod with lewd fondling or touching. The jury instructions never mentioned solicitation. It is undisputed that D.T. testified that she never touched Elrod in a sexual manner.

The Bill of Rights in the Kansas Constitution requires that the accused be informed of the nature of the accusation. A defendant cannot be charged in the information with one offense and be convicted of a different offense which is not a lesser included offense of the crime charged. *State v. Hall*, 246 Kan. 728, 753, 793 P.2d 737 (1990). An information is sufficient if it informs the defendant of the precise offense of which he or she is accused so that the accused may prepare a defense, and ·a judgment thereon will safeguard the accused from a subsequent prosecution for the same offense. *Hall*, 246 Kan. at 754.

The information, complaint, or indictment is the jurisdictional instrument upon which the accused stands trial. If all essential elements of a crime are not charged in an information, or the crime is not a lesser included crime of the offense charged, the trial court

may not impose sentence for a crime not charged. *State v. Houd-yshell*, 20 Kan. App. 2d 90, 96, 884 P.2d 437 (1994).

The original information used the language of the indecent liberties statute, K.S.A. 21-3503. There was testimony which supports a finding that Elrod touched D.T. with the intent to arouse sexual desires. The question, however, is what effect the amended information has on Elrod's conviction. There is no Kansas case law on this issue, and there does not appear to be any instructive case law from other jurisdictions.

The jury did not know that an amended information would be filed. The jury based its decision on the original information and instructions, which were for lewd touching, not solicitation. Elrod knew the crimes with which he was charged. Elrod's defense was a total denial of culpability.

We are somewhat puzzled by the State's decision to amend the information after the conclusion of the trial. However, an information that is amended after Elrod's trial and conviction does not control the trial or his conviction. The information which was in place at the time of the trial contained all of the elements of the crime. The jury heard sufficient evidence to support convictions for indecent liberties with a child.

### *Multiplicity*

Elrod claims that all four of his convictions are multiplicitous because the conduct occurred on October 12, 2004. Elrod claims that the record on appeal identifies only one specific incident alleged by D.T.

Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. Our standard of review on questions of multiplicity is plenary. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998).

The Kansas Supreme Court recently addressed multiplicity in *State v. Schoonover*, 281 Kan. 453, 496, 133 P.3d 48 (2006). The

court clarified that the inquiry must be whether multiple convictions result from the same offense. First, are the convictions from the same conduct? Second, are there two offenses or only one under the statutory definition?

Some factors which may be considered in determining if conduct is a violation of a single statute or from violations of multiple statutes include: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct. 281 Kan. at 497.

Elrod insists that he was only charged with incidents occurring on October 12, 2004. Using the *Schoonover* tests, Elrod's convictions for criminal sodomy and indecent liberties with a child would be multiplicitous. However, the information which controlled the proceedings at trial clearly shows that Elrod was charged with committing acts for a period from October 30, 2003, to October 14, 2004. The jury was instructed that it must find that the sodomy or lewd touching occurred "between October 30, 2002 and October 29, 2003" or between "October 30, 2003 and October 14, 2004." Charges are not multiplicitous when the offenses occur at different times and in different places. *State v. Long*, 26 Kan. App. 2d 644, 645, 993 P.2d 1237 (1999), *rev. denied* 268 Kan. 892 (2000).

D.T. testified that the abuse happened over 100 times in 2002, approximately 100 to 150 times in 2003, and almost every day in 2004. Elrod could have been convicted for any of those acts, presuming the jury believed D.T.'s testimony that Elrod put his hands and mouth on her vagina nearly "every day that it happened." Given the potentially lengthy separation between events and the possibility of a fresh impulse, we have no trouble concluding that Elrod's convictions were not multiplicitous.

It is undisputed that Elrod's only defense was that the alleged abuse never happened. Given D.T.'s testimony regarding the repeated and ongoing nature of the abuse, there were many acts which could have served as the basis of Elrod's convictions.

### Missouri Incident

Prior to trial, the State sought to admit evidence pursuant to K.S.A. 60-455 for the events which allegedly occurred in Missouri.

After hearing arguments from counsel, the trial court admitted testimony regarding the Missouri incident independent of K.S.A. 60-455. The trial court ruled that the testimony could be used to establish the relationship between Elrod and D.T. and show the existence of a continuing course of conduct.

On appeal, Elrod claims the Missouri incident was so far removed in time from the acts charged in the information that it had nothing to do with the routine abuse described by D.T. He also claims that the Missouri allegation was enormously prejudicial.

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

The Kansas Supreme Court recently clarified the law surrounding prior crimes evidence in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006). The court concluded that the practice of allowing admission of prior crimes evidence independent of K.S.A. 60-455 was contrary to both common law and the plain language of the statute. However, the court noted that the factors listed in K.S.A. 60-455 are exemplary rather than exclusive. Thus, a trial court may find that evidence of prior crimes is relevant and admissible to prove a material fact other than the eight listed. However, the evidence must be "subjected to the same sort of explicit relevance inquiries, particularized weighing of probative value and prejudicial effect, and prophylactic limiting instruction we have required when any other K.S.A. 60-455 evidence is admitted." 282 Kan. at 56-57.

In the instant case, the trial court's focus on the relationship between Elrod and D.T. is one of the extra-statutory factors which the *Gunby* court recognized; however, the trial court presented only a brief analysis regarding the independent admission of the prior crime evidence. When considering the entirety of the record on appeal, we conclude that any error in the admission of the evidence was harmless. The *Gunby* court noted the appropriateness

of a harmless error analysis in cases such as this. 282 Kan. at 57. Errors which do not affirmatively cause prejudice to the substantial rights of the defendant do not require reversal when substantial justice has been done. *State v. Ackward*, 281 Kan. 2, 23, 128 P.3d 382 (2006).

The harmless error analysis is applicable here because the trial court instructed the jury that it could consider the incident only "for the purpose of showing the relationship between the defendant and child, and the existence of a continuing course of conduct between the parties." Generally, we believe limiting instructions such as this cure any error in the admission of the evidence. We are also persuaded by the fact that Elrod initiated questioning about the incident in Missouri with his own defense witness.

The trial court erred by admitting the evidence independent of K.S.A. 60-455. However, any error stemming from the trial court's failure to make a particularized inquiry into prejudice is harmless.

### Jury Instructions

At trial, the jury was given an instruction which stated: "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty **until** you are convinced from the evidence that he is guilty." (Emphasis added.)

On appeal, Elrod argues the instruction was improper because the phrase "until you are convinced" misleads the jury into believing that it should expect to be convinced of the defendant's guilt. Elrod contends that a more appropriate instruction would substitute "until" with "unless."

Elrod did not object to the instruction as it was given. It is well established that this court reviews a trial court's failure to give an instruction by a clearly erroneous standard where the party neither requested the instruction nor objected to its omission. *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

The instruction given was PIK Crim. 3d 52.02. Trial courts are not required to use PIK instructions, but it is strongly recommended because the instructions were developed in order to bring accuracy, clarity, and uniformity to jury instructions. Modifications or additions should only be made if the particular facts of a case require it. *State v. Hebert*, 277 Kan. 61, 87, 82 P.3d 470 (2004). The language of the PIK instruction in question has since been modified to show the change suggested by Elrod.

In *State v. Wilkerson*, 278 Kan. 147, 158, 91 P.3d 1181 (2004), the Kansas Supreme Court concluded that the word "unless" is an improved replacement for "until," in the instruction. However, the court did not find that any error stemming from that word choice was reversible error. The court noted that the whole of the instructions accurately stated the law, leaving no room for prejudicial jury confusion.

The jury was told that the State had the burden to prove Elrod was guilty beyond a reasonable doubt. We do not believe the use of the word "until" is clearly erroneous, given the balance of the instructions. We agree with the Supreme Court that using the word "unless" is the better practice; however, finding no clear error, we must reject Elrod's argument.

All of the elemental jury instructions in this case provided the jury with D.T.'s birth date. Elrod claims that this fact removed from the jury an essential element of each offense. Elrod argues that the trial court created a mandatory presumption regarding D.T.'s age.

Elrod did not object to the jury instruction. As we noted, our review of the language in the instructions is evaluated on a clearly erroneous standard. See *Pabst*, 273 Kan. at 660.

The State is required by the Due Process Clause of the Fourteenth Amendment to prove, beyond a reasonable doubt, every element necessary to constitute the crime with which an accused is charged. Evidentiary presumptions cannot be included in the jury instructions if they have the effect of relieving the State of its burden of proof beyond a reasonable doubt of every essential element of a crime. In order to decide whether such an instruction is unconstitutional, a court must decide whether such an instruc-

tion creates a mandatory presumption or merely a permissive inference. A mandatory presumption removes the presumed element from the case once the State has proven the predicate facts giving rise to the presumption. That is, once the State proves certain facts, a jury must infer intent from such facts and the accused cannot rebut the inference. *State v. DeVries*, 13 Kan. App. 2d 609, 613, 780 P.2d 1118 (1989).

At trial, D.T. testified as to her birth date. D.T.'s mother testified that D.T. was 12 years old in 2001. Therefore, the birth date in the jury instructions was not a presumption supplied by the State, it was testimony provided during the trial. Elrod's argument to the contrary is without merit.

### *Cumulative Error*

Elrod claims that the errors he has raised in this appeal present cumulative error such that a new trial is warranted.

The test of whether cumulative trial errors are so great as to require reversal of the defendant's conviction is the totality of circumstances. No prejudicial error may be based on cumulative error if the evidence is overwhelming against the defendant. *Ackward*, 281 Kan. at 29.

We do not believe this is a case where the cumulative error rule would apply. The points raised in Elrod's appeal either do not constitute error or are harmless.

Affirmed.