NOT DESIGNATED FOR PUBLICATION

No. 114,333

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HASSEN AHMEDIN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed May 13, 2016. Affirmed.

*Christine M. Larson*, of Sharp McQueen, P.A., of Liberal, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Hassen Ahmedin appeals the district court's denial of his habeas corpus motion for postconviction relief. Ahmedin sought to have his rape conviction set aside based on claims that his attorneys had provided inadequate representation and that the judge who presided over his trial committed misconduct that kept Ahmedin from getting a fair trial.

But one of the things Ahmedin must show to obtain relief on any of his claims is that the claimed failure had some impact on his trial. After reviewing Ahmedin's claims

and the record of his trial and his earlier appeal, we find that he has not made that showing:

- He claims that the attorney who handled the direct appeal of his conviction should have argued that the evidence wasn't sufficient to convict him of rape. But the victim's testimony was sufficient evidence to convict him, and that testimony wasn't wholly unbelievable, as Ahmedin argues, merely because it had some inconsistencies.

- He claims that his appellate attorney also should have raised a claim that the trial judge committed misconduct. But what he challenges is a single evidentiary ruling, and that ruling didn't substantially prevent Ahmedin from presenting his defense at trial.

- He claims that his attorney at trial should have done a better job of questioning potential jurors so that a juror who was engaged to a prosecutor wouldn't have been seated on the jury. But that prosecutor wasn't participating in the trial, the fiancée was questioned and said she could be fair, and Ahmedin hasn't shown that his attorney would have removed her rather than another juror.

We conclude, therefore, that the district court properly dismissed Ahmedin's motion for habeas relief under K.S.A. 60-1507.

FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2009, Hassen Ahmedin had sexual intercourse with a woman we'll refer to as Jennifer. On February 25, 2010, a Seward County jury concluded that it hadn't been consensual and found Ahmedin guilty of rape. This was Ahmedin's second trial for the rape—the first trial resulted in a hung jury.

Following his conviction, Ahmedin was sentenced to 155 months in prison and lifetime postrelease supervision. He appealed both his conviction and sentence with the help of appellate defender Matthew Edge. On appeal, Ahmedin argued prosecutorial

misconduct, juror misconduct, and that his statutory and constitutional rights were violated when he was denied an interpreter during posttrial and sentencing proceedings, but his appeal was denied. See also *State v. Ahmedin*, No. 105,378, 2012 WL 1919925 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1247 (2013). Ahmedin then filed the habeas corpus motion that led to this appeal. It was denied by the district court without an evidentiary hearing, and Ahmedin appealed.

Much of Ahmedin's appeal focuses on events from the second trial, starting with his trial counsel's performance at jury selection, so we must first review those facts.

At his second trial, jury selection proceeded much like it always does: prospective jurors were brought in, the process was explained, the judge and lawyers asked questions, the potential jurors answered, and eventually a jury of 12 plus 1 alternate was empaneled. And then the trial started. But at some point during the first day of the trial, Ahmedin's attorney, Daniel Schowengerdt, found out that one of the jurors was engaged to a Seward County attorney. Thinking the juror's close connection to an attorney who worked with the prosecutor would bias her against his client, Schowengerdt objected to her continued service on the jury. His objection was denied, and the trial continued.

But the district court came back to his objection a little later in the day, at which time Schowengerdt explained that he had disclosed the names of people who may have known something about the case or been prejudiced toward the defense and that he had expected the prosecution to do the same. The prosecution argued that lawyers' wives served on juries all the time in a small town like Liberal and that the juror wasn't even married to the attorney yet. The district court again denied the objection, noting that Schowengerdt had never asked the jurors whether they knew anyone associated with the attorneys in the case. The court was correct—neither attorney asked the juror any questions that would have led her to divulge that she was engaged to an assistant county attorney.

On the second day of the trial, the district court returned to the issue for a third time—this time calling the juror in to discuss her relationship. The juror said she would have no problem being unbiased and that she had not discussed the case with her fiancé. So the court left her on the jury, and the trial continued.

As the trial proceeded, the events of June 25, 2009, began to unfold. That day, Jennifer and her boyfriend were driving home from Amarillo, Texas, and picked up Ahmedin along the way. Ahmedin was a friend of Jennifer's boyfriend and was going to stay with them while he tried to find work in Liberal, Kansas. Once they returned to Liberal and Jennifer's boyfriend went to work, Jennifer, Ahmedin, and Jennifer's 2-month-old son were alone in the apartment. According to Jennifer, after she put the baby down to sleep, Ahmedin began making sexual advances and eventually forced her to have sexual intercourse. Jennifer said she protested the advances—telling Ahmedin to stop rubbing her shoulders, for instance—asked him to get off of her, bit and scratched at him, and tried to push him away as he was raping her. Once the sexual intercourse was over, Ahmedin got in the shower; Jennifer locked herself in a bedroom and called the police.

During the second trial, but not the first, Schowengerdt called a witness to rebut Jennifer's testimony—Said Goodir. Before Goodir could say much, however, the prosecution objected to Schowengerdt's questioning, arguing that "Mr. Schowengerdt has just broken some major rules here," and that the questioning was "so far in the rape shield," a reference to the Kansas rape-shield statute that prevents questioning a sex-crime victim about other sexual conduct unless it has been shown relevant through a pretrial motion. See K.S.A. 2015 Supp. 21-5502. After a protracted back and forth, the district court denied the prosecution's objection but told Schowengerdt to "play it close." Goodir then testified that Jennifer had told him that she hadn't been raped and that Jennifer and her boyfriend had broken up 2 days after the incident with Ahmedin.

4

Ahmedin presented the rest of his case, the attorneys gave closing statements, and the jury found him guilty of rape.

ANALYSIS

This case has come to us on Ahmedin's appeal of the district court's summary dismissal of his habeas motion. Since the district court denied the motion without holding an evidentiary hearing, we must review whether "the motion, files, and records of the case conclusively show" that Ahmedin is not entitled to relief on his ineffective-assistance-of-counsel claims. *Edgar v. State*, 294 Kan. 828, 836, 283 P.3d 152 (2012). We conduct that review de novo—that is, independently and without deference to the district court. *Fuller v. State*, 303 Kan. ___, 363 P.3d 373, 381 (2015).

All of Ahmedin's claims allege the ineffective assistance of his attorneys—either at trial or on appeal. When a defendant seeks to set aside the result of a criminal trial on the ground that his defense attorney provided ineffective assistance, the defendant has the burden to show (1) that the attorney's work was below minimum standards and, thus, was constitutionally deficient and (2) that the attorney's substandard work prejudiced the defense. *Wilson v. State*, 51 Kan. App. 2d 1, Syl. ¶ 1, 340 P.3d 1213 (2014), *rev. denied* 301 Kan. ___ (April 29, 2015). To establish prejudice, the defendant must show a reasonable probability that the result would have been different if not for the attorney's deficient performance. 51 Kan. App. 2d at 26. A reasonable probability in this context is a probability sufficient to undermine our confidence in the trial's outcome. *Edgar*, 294 Kan. at 838.

For our consideration of Ahmedin's claim of judicial misconduct, we should also note the standards for determining whether a trial result should be set aside for a judge's misconduct. To justify setting aside a jury's verdict, the misconduct must have been so

5

serious that it prejudiced the substantial rights of the defendant. *State v. Hayden*, 281 Kan. 112, Syl. ¶ 1, 130 P.3d 24 (2006). In addition, because Ahmedin argues that his appellate attorney should have raised this claim in his direct appeal, Ahmedin must also meet the two-part standard we have described for an ineffective-assistance-of-counsel claim.

With these standards in mind, we turn to Ahmedin's specific claims.

I. *Ahmedin's Trial Counsel Was Not Ineffective for Failing to Interrogate a Prospective Juror about Her Relationship to an Assistant County Attorney.*

Ahmedin claims that his trial counsel—Schowengerdt—provided ineffective assistance because he "failed to properly question" potential jurors during jury selection, which led to M.D., the fiancée of an assistant Seward County attorney, sitting on the jury. Even if we presume that Schowengerdt's failure to ask the potential jurors about their connection to attorneys in the county attorney's office constituted inadequate representation, Ahmedin has not shown any prejudice arising from that failure. See *Edgar*, 294 Kan. at 843 (noting that courts don't have to consider whether counsel was ineffective if the case can be resolved under the prejudice standard).

To meet the prejudice standard under his theory of Schowengerdt's ineffective assistance, Ahmedin must convince the court that had Schowengerdt asked potential jurors about their connection to any of the lawyers in the case, M.D. would have disclosed her connection to the county attorney's office and either been dismissed outright for bias or eliminated from the jury panel by Ahmedin's attorney. In any case, if she wasn't biased against Ahmedin, then her presence on the jury could not undermine the court's confidence in the outcome of his trial. See *State v. Coryell*, No. 110,542, 2016 WL 757568, at *16 (Kan. App. 2016) (unpublished opinion) (noting that a party claiming ineffective assistance based on inadequate questioning of prospective jurors generally

must show that at least one juror had an actual bias) (citing cases), *petition for rev. filed* March 9, 2016.

Nothing in the record suggests that M.D. was biased against Ahmedin. In fact, Ahmedin does not allege that M.D. *was* biased. He simply argues that "[d]uring voir dire, [Schowengerdt] had no opportunity to question [M.D.] about her knowledge of the case, her relationship with the County Attorney's Office or about being fair or impartial" and that Schowengerdt's failure to "determine [M.D.'s] relationship with the County Attorney's Office" likely prejudiced him. And though Ahmedin dwells on M.D.'s status as the fiancée of an assistant county attorney, he does not explain how that relationship affected her ability to render an unbiased verdict in his case. *Cf. State v. Ji*, 251 Kan. 3, 13, 832 P.2d 1176 (1992) (denying ineffective-assistance claim when movant failed to explain how "the religious belief of any juror affected the ability of that juror to render a verdict according to the law"). Ahmedin must "'make more than conclusory contentions and must state an evidentiary basis in support of [his] claims or an evidentiary basis must appear in the record.'" *Trotter v. State*, 288 Kan. 112, 131-32, 200 P.3d 1236 (2009).

Here, although Schowengerdt's in-depth questioning of M.D. was delayed until the second day of trial, he ultimately *did* ask her about her relationship with an assistant county attorney. And during this questioning, M.D. stated that her relationship would not prevent her from being fair and impartial—and the trial judge did not remove M.D. as a juror after hearing her responses.

Ahmedin cites *State v. Timley*, 255 Kan. 286, 875 P.2d 242 (1994), *disapproved on other grounds by State v. Brooks* 298 Kan. 672, 317 P.3d 54 (2014), for support, but the case actually undermines his argument. In *Timley*, the Kansas Supreme Court stated that denying a defendant's objection to dismiss a juror because she was acquainted with the judge would not be error because the juror "affirmatively stated that her personal acquaintance with the trial judge would not affect her ability to be fair and impartial."

255 Kan. at 308-09. The same is true here. When questioned mid-trial, M.D. indicated that her relationship with a county attorney would not affect her ability to be fair and impartial. Given that response, there is no reason to suspect bias or to find it probable that she would have been dismissed from service had Schowengerdt more thoroughly questioned her during jury selection. Nor has Ahmedin made any claim that he would have removed M.D. from the jury rather than one of the other jurors he removed during jury selection with a peremptory challenge (one of the challenges each side is given to remove a juror without cause). Accordingly, Ahmedin has failed to show prejudice.

II. *Ahmedin's Appellate Counsel Was Not Ineffective.*

Ahmedin next argues that his appellate counsel, Edge, provided ineffective assistance because he did not raise sufficiency-of-the-evidence and judicial-misconduct claims on direct appeal. Ahmedin does not explicitly argue that failure to raise these claims fell below constitutionally required standards for defense attorneys. Instead, he focuses on the prejudice prong of the ineffective-assistance test.

We could rule against Ahmedin on both appellate-counsel claims for his failure to meet the first part of the two-part test for ineffective assistance. The inadequacy of counsel is not self-evident: The mere "failure to raise an issue on direct appeal is not per se ineffective assistance." *Miller*, 298 Kan. at 932 (citing *Laymon v. State*, 280 Kan. 430, 439, 122 P.3d 326 [2005]). But even if we assume that the representation was inadequate (here for the failure to raise these issues on appeal), we still find that Ahmedin has not shown prejudice, the second of the two showings he is required to make.

A. *Ahmedin Has Not Shown Prejudice in His Attorney's Failure to Challenge the Sufficiency of the State's Evidence.*

Ahmedin argues that Edge should have argued that the State failed to prove that he raped Jennifer—in other words, Edge should have challenged the sufficiency of the State's evidence presented at trial. Thus, Ahmedin must show that if it weren't for Edge's failure to raise that challenge, "there is a reasonable probability that . . . the appeal would have been successful." *Miller*, 298 Kan. at 934; see *Mattox v. State*, 293 Kan. 723, 726, 267 P.3d 746 (2011). We will therefore look to see whether the State presented sufficient evidence for the jury to find Ahmedin guilty of rape. If it did, then no error would have been found on appeal, and Edge's failure to raise this issue caused him no harm.

When an appellate court reviews the sufficiency of the evidence, it does so after the factfinder—here a jury—has found the evidence sufficient beyond a reasonable doubt and convicted the defendant. Accordingly, we must "look[] at all the evidence in a light most favorable to the prosecution and determin[e] whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In doing so, the appellate court does not reweigh the evidence or determine the credibility of witnesses. 294 Kan. at 375.

Under K.S.A. 21-3502—the rape statute in effect at the time of Ahmedin's conviction—rape is "[s]exual intercourse with a person who does not consent to the sexual intercourse" in certain circumstances, such as "[w]hen the victim is overcome by force or fear." K.S.A. 21-3502(a)(1)(A). The State presented evidence to support each element of the crime: Jennifer testified that the sexual intercourse had not been consensual, that Ahmedin had pinned her down, that she had asked him to stop, and that he had not stopped.

9

Though it may seem strange in the age of crime-scene shows like *Law and Order* and *CSI* to rely primarily, if not entirely, on a victim's testimony, rape cases usually do not include smoking-gun physical evidence or eyewitnesses who can corroborate a victim's testimony. Instead, they often rest on whether a jury finds the victim's testimony credible. Accordingly, as courts have long held, a victim's testimony, without any corroboration, "can be sufficient to sustain a rape conviction." *State v. Plunkett*, 261 Kan. 1024, 1033, 934 P.2d 113 (1997) (citing *State v. Borthwick*, 255 Kan. 899, Syl. ¶ 2, 880 P.2d 1261 [1994]); see also *State v. McGill*, 50 Kan. App. 2d 208, 254, 328 P.3d 554 (2014) (Atcheson, J., dissenting) ("Kansas courts have long held the statement of a rape victim is legally sufficient to sustain a conviction for that offense.") (citing *State v. Tinkler*, 72 Kan. 262, 264-65, 83 P. 830 [1905]).

Even so, Ahmedin argues that inconsistencies in Jennifer's testimony prevented the State from proving that the sexual intercourse at issue was not consensual. Because inconsistency in testimony is ultimately a question of how credible a witness is, the effect of inconsistent testimony is usually left up to the jury and not reviewed by this court. *State v. Price*, 30 Kan. App. 2d 569, 586, 43 P.3d 870 (2002), *rev'd on other grounds* 275 Kan. 78, 61 P.3d 676 (2003); see also *State v. Elrod*, 38 Kan. App. 2d 453, 457, 166 P.3d 1067 (2007) (noting that the effect of inconsistencies in a sexual-assault victim's testimony were best left to the jury), *rev. denied* 285 Kan. 1175 (2008). But rape cases may be an exception; in one case, the Kansas Supreme Court reversed a rape conviction based on its review of the victim's testimony, which it found so seriously undermined and contradicted by other testimony that it could not support a conviction. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

In later cases, our Supreme Court has described *Matlock* as "aberrant" and "perhaps the only case of its kind in this state where the Supreme Court directly weighed the evidence and assessed the credibility of the [victim] to reverse a conviction for rape." *State v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1225 (2009); see also *State v. Kettler*, 299

10

Kan. 448, 470, 325 P.3d 1075 (2014) (citing *Brinklow* and distinguishing *Matlock*); *State v. Winn*, No. 111,474, 2016 WL 1169422, at *3-4 (Kan. App. 2016) (reviewing *Matlock*, *Brinklow*, and other cases on how to assess witness credibility on appeal). Under these cases, we review whether the inconsistencies "render the witness's entire testimony unbelievable." *State v. Rivera*, No. 96,899, 2008 WL 183323, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 286 Kan. 1184 (2008). That is, this court will overturn a rape conviction because of a victim's inconsistent testimony only if that testimony is "so incredible and improbable as to defy belief." *Plunkett*, 261 Kan. at 1033 (citing *Borthwick*, 255 Kan. 899, Syl. ¶ 2).

The inconsistencies Ahmedin points out, however, were more than adequately addressed by trial counsel and did not render Jennifer's entire testimony so incredible as to defy belief. At the second trial, Ahmedin's attorney pointed out that Jennifer testified at the first trial that Ahmedin had made sexual advances toward her before pinning her down and forcing her to engage in sexual intercourse. This included rubbing Jennifer's breasts, both over and under her shirt, and pinning her against the wall while rubbing his genitalia against hers with their clothing still on. As Ahmedin's attorney pointed out, Jennifer did not testify to this on direct examination during the second trial. Rather, when questioned about the same time frame, Jennifer testified that Ahmedin had simply started rubbing her shoulders and that she had asked him to stop. When cross-examined, Jennifer admitted her prior testimony without equivocating. So when the jury went to deliberate, it had heard both stories and was aware of Jennifer's inconsistencies.

These inconsistencies did not make her entire testimony unbelievable. Jennifer called police immediately after the rape, called her mother to discuss what had happened, and submitted to a rape kit. Moreover, the detective and officer involved testified that Jennifer's statements to them were consistent throughout the entire investigation and that the evidence at the scene was consistent with her testimony.

11

The inconsistencies Ahmedin points out certainly would factor into a jury's credibility determination. But the jury found Jennifer credible, and there's no reason for us to interfere with its conclusion. In sum, the State presented sufficient evidence for a jury to find that the sexual intercourse between Ahmedin and Jennifer was not consensual and to convict Ahmedin of rape. Because of this, Ahmedin was not prejudiced by his appellate counsel's failure to raise a sufficiency-of-the-evidence challenge on direct appeal—the claim would not have been successful even if his attorney had made it.

B. *Ahmedin Has Not Shown Prejudice in the Failure of His Appellate Counsel to Raise a Claim of Judicial Misconduct.*

Ahmedin's final claim is that Edge should have raised judicial misconduct as an issue on direct appeal. Ahmedin must show that if it weren't for Edge's failure to raise a judicial-misconduct claim, there is a reasonable probability that the appeal would have been successful, *Mattox*, 293 Kan. at 726, which requires this court to determine whether the district judge's complained-of conduct rose to the level of judicial misconduct.

To establish judicial misconduct, Ahmedin must show that the district court's conduct substantially prejudiced his right to a fair trial. *State v. Hayden*, 281 Kan. 112, 116, 130 P.3d 24 (2006); *State v. Miller*, 274 Kan. 113, Syl. ¶ 3, 49 P.3d 458 (2002). In determining whether Ahmedin has met his burden, this court considers the "facts and circumstances surrounding the alleged misconduct." *Hayden*, 281 Kan. at 116.

We begin by noting that it's a stretch to categorize Ahmedin's complaint as one regarding "judicial misconduct." What's involved here is a single evidentiary ruling, something quite unlike the judicial misconduct found in the *Hayden* case, which involved repeated interference with the ability of the attorneys for both sides to fairly try the case, or that found in *Miller*, where the trial judge in a bench trial repeatedly interrupted both attorneys, expressed his belief during trial that a witness was lying, made sarcastic

12

remarks, and told counsel to move on to another witness because he didn't believe the one then testifying. Here, Ahmedin's initial argument is simply that the district court improperly applied Kansas' rape-shield statute when ruling on a single objection to Schowengerdt's questioning of Said Goodir.

The rape-shield statute "prohibits the admission of evidence of a complaining witness' previous sexual conduct with any person, including the defendant, in specified sex offense cases unless the trial court first determines the evidence is relevant and otherwise admissible." *State v. Holman*, 295 Kan. 116, Syl. ¶ 7, 284 P.3d 251 (2012); K.S.A. 2015 Supp. 21-5502. But while the prosecutor claimed that the questioning had gone "far [into] the rape shield," the district court actually did not apply the statute to Schowengerdt's questioning.

When Schowengerdt first questioned Goodir about any conversations he had had with Jennifer, the State quickly objected, stating that "Mr. Schowengerdt has just broken some major rules here." The State argued that because Goodir's testimony spoke to Jennifer's relationship with her boyfriend—specifically that the couple had broken up 2 days after the incident with Ahmedin—Schowengerdt had violated the rape-shield statute. But the court found that the statute did not apply since, as Schowengerdt pointed out, Goodir's testimony did not deal with Jennifer's previous sexual history—his testimony was simply that Jennifer and her boyfriend had broken up.

The district court did admonish Schowengerdt to "play it close," and Ahmedin also contends that this admonition somehow prevented Schowengerdt from presenting Ahmedin's full defense. But we do not find that it substantially prejudiced the defense. Schowengerdt told the court what he was after from Goodir—testimony that Jennifer had recanted and told him that she had said Ahmedin raped her because she had been afraid of her boyfriend. And Schowengerdt was able to elicit that testimony, even after the court told him to "play it close" to avoid a rape-shield problem. Goodir testified that Jennifer

13

had "said he didn't do it. She accept[ed] it [the] first time," apparently meaning that it was not a rape and that the sex had been accepted, *i.e.*, consensual. Schowengerdt then asked, "Did she tell you why she reported the rape to the police then?" Goodir replied, "She scared of her boyfriend." Schowengerdt chose to end his questioning of Goodir after that response.

Though it is true that Schowengerdt did not dwell long on Goodir's testimony, he got what he was after—testimony that Jennifer had said she wasn't raped. Ahmedin was not prevented from presenting his defense, and despite admonishing Schowengerdt to "play it close," the district court never sustained a substantive objection against the presentation of this testimony. Since the district court did not rule that the evidence could not be presented, did not prevent the evidence from being presented, and did not unduly interfere with defense counsel's ability to present Ahmedin's defense, there was no judicial misconduct—and Edge did not provide inadequate representation by failing to raise that issue on appeal.

In sum, even if we assume that Ahmedin's trial and appellate attorneys performed inadequately in the ways he has alleged in this appeal, Ahmedin has not shown—even to the extent required to obtain an evidentiary hearing—that he was prejudiced from these alleged failings. In the absence of some viable claim of prejudice, Ahmedin has given no reason to set aside his conviction.

We therefore affirm the district court's judgment.

14