NOT DESIGNATED FOR PUBLICATION

No. 125,921

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN RAY RICKE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Oral argument held November 12, 2024. Opinion filed May 2, 2025. Affirmed.

*Wendie C. Miller*, of Kechi, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., CLINE and PICKERING, JJ.

PICKERING, J.: John Ray Ricke appeals the district court's denial of his K.S.A. 60-1507 motion following a preliminary hearing. Ricke claims the district court erred by not holding a full evidentiary hearing on his motion. After thoroughly reviewing the record, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying Ricke's conviction were set forth in his direct appeal:

1

"B.D. (13 years old) and S.D. (8 years old) are brothers. On Christmas night 2017, the brothers and their parents celebrated the occasion with the boys' grandparents and a cousin, Ricke. Upon returning home, an argument occurred between B.D. and his mother because B.D. secretly had received a cellphone from Ricke. During the argument, B.D.'s mother told him that he was grounded and, as a result, he would not be able to visit his grandparents or Ricke. In response, B.D. yelled at his mother that he did not care because he 'hate[d] [Ricke].'

"In response to his mother's inquiries, B.D. disclosed that Ricke had raped him. Later that evening, the parents also spoke with S.D. who told them that Ricke had sexually assaulted him. Law enforcement officers were promptly contacted.

"During an interview with Wichita Police Detective Crystal Schell of the Exploited and Missing Children Unit, S.D. reported that in October Ricke had put his 'crotch' in the hole in S.D.'s 'butt,' placed his mouth on S.D.'s crotch, and moved his hand on S.D.'s crotch while the two individuals were naked on Ricke's bed.

"Ricke was charged with two counts of aggravated sodomy with B.D. in violation of K.S.A. 2017 Supp. 21-5504(b)(1) and (c)(3), one count of aggravated indecent liberties with S.D. in violation of K.S.A. 2017 Supp. 21-5506(b)(3)(A) and (c), and one count of aggravated sodomy with S.D. in violation of K.S.A. 2017 Supp. 21-5504(b)(1) and (c)(3).

"At trial, B.D. and S.D. testified to numerous sexual acts perpetrated by Ricke. Videotaped interviews of the brothers recounting some of the sexual acts were also shown to the jury. Additionally, the boys' older brother testified that in September 2018 Ricke told him that he had sexual relations with B.D. and S.D., which Ricke characterized as 'bro sex.'

"By agreement of the parties, a stipulation was given to the jury stating that on January 12, 2015, Ricke had previously pled guilty to and was convicted of sexual exploitation of a child. This conviction was for Ricke's possession of a visual depiction of two nude males who appeared under the age of 12 engaged in a sexual encounter. There was also trial testimony that Ricke showed S.D. and B.D. child pornography.

"Ricke's girlfriend testified on behalf of the defense. She stated that she was in a relationship with Ricke at the time B.D. and S.D. reported the sexual abuse. According to the girlfriend, Ricke is impotent and, as a result, he is physically unable to have sex.

"At the conclusion of the jury trial, Ricke was convicted of one count of aggravated indecent liberties with S.D. He was acquitted of both counts of aggravated

sodomy with B.D. The count of aggravated sodomy with S.D. resulted in a mistrial. This count was later dismissed by the State.

". . . Ricke was sentenced to life in prison without the possibility of parole for 25 years." *State v. Ricke*, No. 119,854, 2020 WL 2781698, at *1-2 (Kan. App. 2020) (unpublished opinion).

In his direct appeal, Ricke raised five issues. After review, the *Ricke* panel affirmed his conviction. 2020 WL 2781698, at *1.

In 2021, Ricke timely filed a pro se K.S.A. 60-1507 motion alleging ineffective assistance of trial and appellate counsel. Ricke raised six claims against trial counsel:  (1) failure to object to an improper legal opinion by Wichita Police Detective Crystal Schell during her trial testimony; (2) failure to object to the State bolstering the victims' credibility during closing argument; (3) failure to investigate and pursue an alibi defense; (4) failure to obtain an expert witness on child witness interviews; (5) failure to challenge the victims' credibility and point out inconsistencies in the evidence during closing argument; and (6) failure to object to the elements instruction for aggravated indecent liberties with a child and the related verdict form. Ricke also made three claims against his appellate counsel:  (1) failure to raise a defective complaint on appeal; (2) failure to cite legal authority for a novel argument; and (3) improperly raising an issue not preserved for appeal. After holding a preliminary hearing, the district court denied Ricke's K.S.A. 60-1507 motion, finding he raised no substantial issues of fact or law.

Ricke timely appealed.

ANALYSIS

*Our Standard of Review and the Rules We Follow*

"When, as here, a district court denies a 60-1507 motion based only on the motion, files, and records after a preliminary hearing, we are in as good a position as that court to consider the merits. So we exercise de novo review." *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

A K.S.A. 60-1507 movant must show by a preponderance of the evidence: (1) "[T]he judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the [movant] as to render the judgment vulnerable to collateral attack." See K.S.A. 2024 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2025 Kan. S. Ct. R. at 238) (preponderance of evidence burden).

A movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019).

Ineffective assistance of counsel claims are analyzed under the two-pronged test outlined in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first *Strickland* prong, the claimant must show that counsel's performance was deficient—that is, "counsel's representation fell below an objective standard of reasonableness." *State v. James*, 319 Kan. 178, 184, 553 P.3d 308 (2024). Judicial scrutiny must be highly deferential. "A fair assessment of

4

counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time." 319 Kan. at 184. The court "must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy." 319 Kan. at 184.

Under the second *Strickland* prong—prejudice—the claimant must show that there was a reasonable probability—"sufficient to undermine confidence in the outcome"—that counsel's "performance affected the outcome of the proceedings, based on the totality of the evidence." 319 Kan. at 184-85. If a defendant cannot show prejudice as a result of counsel's alleged deficiencies, "a court need not determine whether counsel's performance was deficient . . . ." *Strickland*, 466 U.S. at 697.

*Ricke's Trial Counsel Was Not Ineffective for Failing to Object to Schell's Testimony*

Ricke was convicted under K.S.A. 2017 Supp. 21-5506(b)(3)(A), which defines aggravated indecent liberties with a child as engaging with a child less than 14 years old in "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." To determine whether a touching is lewd, "a factfinder should consider whether the touching tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person." *State v. Ta*, 296 Kan. 230, Syl. ¶ 5, 290 P.3d 652 (2012).

Accordingly, the State had to prove the following elements: (1) Ricke "engaged in lewd fondling or touching of" S.D.; (2) Ricke "intended to arouse or satisfy the sexual desires of" S.D. or himself, or both; (3) S.D. was less than 14 years old when the act

5

occurred; (4) Ricke was over 18 years old when the act occurred; and (5) the act occurred between October 1 and October 31, 2017, in Sedgwick County, Kansas. See PIK Crim. 4th 55.121 (2016 Supp.).

At trial, the following exchange occurred without objection from trial counsel during Schell's testimony:

> "[The State:]    Then in [S.D.'s] interview he describes a couple different actions that occur. In one instance he describes his penis, [S.D.'s] penis, being touched by John Ricke, is that correct?
> "[Schell:]    Yes.
> "[The State:]    That would be a type of lewd fondling or touching?
> "[Schell:]    Yes."

Ricke now claims trial counsel was ineffective for failing to object to Schell's statement that touching S.D.'s penis qualified as lewd fondling or touching. He contends that Schell's testimony invaded the jury's role in determining whether the alleged conduct was lewd. Ricke also claims that Schell's testimony violated the district court's pretrial order barring interpretations of Ricke's conduct by noncomplaining witnesses. Ricke asserts that because most of the evidence at trial involved his other charges, Schell's conclusion that the touching was lewd "carried weight with jurors."

The State responds that trial counsel had no reason to object because Schell did not testify that Ricke was guilty. The State asserts that because the action Schell testified to fit the definition of lewd fondling or touching, any error had no effect on the verdict.

Pursuant to K.S.A. 2024 Supp. 60-456(a), nonexpert witnesses may testify to their opinions or inferences if the opinions or inferences "(1) [a]re rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge

6

within the scope of subsection (b)." Further, under K.S.A. 2024 Supp. 60-456(d): "Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

The Kansas Supreme Court examined the admissibility of a police officer's opinion on illegal uses of an object in *State v. Hernandez*, 222 Kan. 175, 563 P.2d 474 (1977). There, during a trial for possession of burglary tools, a police officer testified that a pry bar with the end filed down—like the one seized by police—"'would be normally used to pry any locked object or open something of that nature.'" 222 Kan. at 177. The Supreme Court found the officer's statement admissible under K.S.A. 60-456(a) as nonexpert testimony rationally based on the officer's perception and helpful for a clearer understanding of the testimony. 222 Kan. at 177.

In *State v. Garza*, No. 98,820, 2009 WL 1036108 (Kan. App. 2009) (unpublished opinion), a panel of this court considered whether police officers provided improper legal opinions at trial. There, as police pursued Garza's vehicle, a police officer had to accelerate out of Garza's way after Garza swerved toward the police car. Later in the pursuit, Garza drove toward police officers and swerved away at the last minute. Garza was convicted of aggravated assault of a law enforcement officer among other offenses. At trial, two officers testified that they would consider a car a deadly weapon—an element of aggravated assault of a law enforcement officer—when driven the way Garza drove. One officer testified that he would have suffered imminent bodily harm if he was run over by Garza's car.

The *Garza* panel found the officers' testimony admissible under K.S.A. 60-456(a). The panel explained that the statements were based on the officers' perceptions and were helpful to understand how dangerously Garza drove. The panel also noted that the jury acquitted Garza of aggravated battery of one officer and aggravated assault of another

7

officer, indicating that the jury did not substitute the officers' judgment for its own. 2009 WL 1036108, at *3.

Like *Hernandez* and *Garza*, Schell testified to her perception of the touching S.D. reported. Schell's statement was helpful to understand the disclosures S.D. provided in his interview. Both here and in *Garza*, the witnesses testified that, in their opinions, certain acts or conduct matched a certain legal definition. While such testimony can involve an ultimate issue for the jury to decide, K.S.A. 2024 Supp. 60-456(d) provides that if a nonexpert opinion is otherwise admissible, it is not objectionable specifically for encompassing an ultimate issue.

Even if trial counsel had been deficient for failing to object, Ricke must show a reasonable probability that the trial would have resulted differently absent trial counsel's error. See *James*, 319 Kan. at 184. He cannot. The act of touching S.D.'s penis is consistent with the definition of lewd fondling or touching. See *Ta*, 296 Kan. 230, Syl. ¶ 5. Consequently, Ricke cannot show prejudice.

*Trial Counsel Was Not Ineffective for Failing to Object to the State's Closing Arguments*

Ricke contends that trial counsel was ineffective for failing to object to the prosecutor's closing argument comments bolstering the victims' credibility. According to Ricke, the prosecutor improperly and repeatedly asked the jury why the victims would lie and expressly claimed the victims told the truth. Ricke claims the prosecutor shifted the burden of proof by equating the burden to a credibility finding. He asserts he was prejudiced by trial counsel's failure to object based on the lack of physical evidence and the importance of the victims' credibility.

The State responds that Ricke attempts to "repackage" the same argument he raised on direct appeal challenging the prosecutor's statements. The State contends that

8

because the *Ricke* panel rejected Ricke's prosecutorial error claim on direct appeal, this issue is barred by res judicata.

Whether res judicata applies is a question of law subject to unlimited review. *State v. Moncla*, 317 Kan. 413, 415, 531 P.3d 528 (2023). Courts will invoke res judicata to bar a successive suit where the following requirements are met: "'(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits.'" *Bogguess v. State*, 306 Kan. 574, 580, 395 P.3d 447 (2017).

On direct appeal, Ricke challenged the prosecutor's statements as improperly implying that B.D. and S.D. told the truth. The *Ricke* panel rejected that argument, finding that, rather than expressing her personal opinion on the victims' credibility, "the prosecutor appropriately highlighted the many factors that, taken together, indicated the boys testified truthfully regarding Ricke's sexual assaults." 2020 WL 2781698, at *11. The panel further concluded that even if the prosecutor's statements were improper, the error was harmless since the verdicts indicated "the jury carefully and separately considered S.D.'s and B.D.'s credibility" and the district court instructed the jury that counsel's statements were not evidence. 2020 WL 2781698, at *11.

The Supreme Court recently discussed the applicability of res judicata to a K.S.A. 60-1507 proceeding in *James*. There, on direct appeal, the Supreme Court rejected James' claim that he suffered a speedy trial violation based on lack of waiver of his speedy trial rights. 319 Kan. at 187. James later filed a K.S.A. 60-1507 motion alleging trial counsel was ineffective for agreeing to continuances and waiving his speedy trial rights. The Supreme Court found that because it had already concluded James' speedy trial rights were not violated, res judicata barred James from relitigating the issue. The court specifically found that James could not establish the first *Strickland* prong, that trial counsel's performance was deficient. *James*, 319 Kan. at 188-89.

9

This case mirrors *James*. On direct appeal, the *Ricke* panel concluded that no prosecutorial error occurred and that Ricke suffered no prejudice. Ricke simply attempts to relitigate his prosecutorial error claim while repackaging it as ineffective assistance of counsel. He cannot. This claim is barred by res judicata.

*Trial Counsel Was Not Ineffective for Failing to Investigate and Pursue an Alibi Defense*

Ricke contends that trial counsel did not discuss trial strategy with him and failed to investigate potential defenses. He claims that during his first meeting with trial counsel, he gave trial counsel a two-page document explaining why he believed B.D. and S.D. accused him and that he later provided trial counsel another copy of his proposed defense. Ricke contends that had trial counsel investigated an alibi defense, trial counsel would have been prepared to elicit alibi testimony from B.D. and S.D. at trial.

The State replies that Ricke presents a conclusory claim in failing to identify alibi witnesses or explain the contents of his letters to trial counsel.

In *Breedlove v. State*, 310 Kan. 56, 445 P.3d 1101 (2019), our Supreme Court addressed an ineffective assistance of counsel claim for failure to investigate an alibi defense. After his murder conviction, Breedlove filed a K.S.A. 60-1507 motion, claiming, among other things, trial counsel failed to pursue an alibi defense that a friend had given Breedlove a ride home at the time of the murder. The district court summarily denied the motion. Our Supreme Court found trial counsel was not ineffective as "Breedlove fail[ed] to identify that friend and points to nothing in the record that would indicate that he told his counsel about the alibi or provided his attorney with any information from which such a defense could have been developed." 310 Kan. at 66.

*Breedlove* is instructive. In his K.S.A. 60-1507 motion, Ricke claimed he twice gave trial counsel a two-page document of his defense. But Ricke's K.S.A. 60-1507

10

motion did not explain the contents of those writings, what his alleged alibi was, or how trial counsel should have questioned B.D. and S.D. Like in *Breedlove*, Ricke's claim that trial counsel failed to investigate defenses is conclusory and lacks a factual basis. Trial counsel was not ineffective for failing to investigate and pursue an alibi defense.

*Trial Counsel Was Not Ineffective for Failing to Obtain an Expert Witness on Child Witness Interviews*

Next, Ricke asserts that "other than short phone calls" made by Paragon Investigations to three individuals, trial counsel made "no effort" to obtain an expert on child witness interviews. Ricke contends that an evidentiary hearing is warranted so an expert can testify to the quality of S.D.'s interview. He claims he was prejudiced by being convicted with no physical evidence where trial counsel had "no way to effectively cross examine the police or SRS interviewers" about the interview techniques.

The State responds that Ricke's claim is conclusory. It contends that an evidentiary hearing would be a "fishing expedition" because Ricke did not identify an expert that trial counsel should have retained or how the expert would have added to his case. The State submits that Ricke's defense was not centered on interview techniques, trial counsel effectively cross-examined the victims, and Ricke's girlfriend testified that he was impotent. Thus, Ricke cannot show prejudice.

B.D. and S.D. were interviewed separately. Schell and Shelley Sprecker, a social worker with the Department for Children and Families, sat in for the interviews. Schell wore plain clothes during the interviews, though she identified herself as "Detective Schell" at the beginning of each recording.

At trial, Schell testified that detectives and social workers participate in Kansas Child First Training for conducting interviews. Schell explained the interview techniques

11

taught in that training: "We do forensic interviews so that we don't ask leading questions. We ask open-ended questions. That way we're not leading them to say something based on the report or based on what we've been told. We leave it up to them to tell us the information."

Trial counsel did not cross-examine Schell regarding her interview techniques. Instead, trial counsel's questions centered on the fact that police seized some of Ricke's devices looking for child pornography but were unable to find any.

Ricke compares this case to *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222 (2002). At Mullins' K.S.A. 60-1507 evidentiary hearing, an expert testified that retaining an expert on child witness interviews is particularly important in sex offense cases so a defendant can more effectively challenge the interview process rather than directly attack the victim's credibility. The expert also testified that the necessity of using an expert in such cases was "common knowledge" among attorneys, opining that "there could be no valid trial strategy in failing to call or utilize an expert in this type of case." 30 Kan. App. 2d at 713. Trial counsel did not interview any of the State's witnesses or look into hiring an expert despite "'general' concerns" with how one interview was conducted. 30 Kan. App. 2d at 714-15. Trial counsel conceded that given more time and resources, he would have hired an expert.

The *Mullins* panel found the use of experts was well known at the time of Mullins' trial and the failure to hire an expert constituted deficient performance. The panel concluded the failure to challenge the reliability of the interviews "severely hampered [Mullins'] ability to challenge the victim's testimony at trial" and prejudiced Mullins. 30 Kan. App. 2d at 717. The panel noted that, because of counsel's failure to provide expert testimony, "the jury heard only the victim's unchallenged allegations of abuse—bolstered by [improper] testimony . . . that the victim had not been coached." 30 Kan. App. 2d at 718.

The State counters that *Mullins* did not "establish a bright line rule that all instances of a counsel's failure to secure and utilize an expert on child witness interview techniques equates to deficient representation." The State also claims *Mullins* is distinguishable, emphasizing that this case involves two victims, the jury watched the interviews, and both victims disclosed the abuse to their parents.

Other panels have distinguished *Mullins*. In *State v. Lewis*, 33 Kan. App. 2d 634, 111 P.3d 636 (2003), Lewis was convicted of aggravated indecent liberties with a nine-year-old victim. After his direct appeal, Lewis filed a K.S.A. 60-1507 motion, claiming, among other things, ineffective assistance of trial counsel for failure to consult an expert on child witness interviews. After an evidentiary hearing, the district court denied Lewis' K.S.A. 60-1507 motion.

On appeal, the *Lewis* panel distinguished the case from *Mullins*. The panel found the State presented evidence at the evidentiary hearing that the interview techniques used to interview the victim were "within accepted protocol." 33 Kan. App. 2d at 647. The panel also highlighted that the victims and witnesses were subject to cross-examination at trial and that the State did not emphasize the reliability of the interview techniques to the jury. 33 Kan. App. 2d at 647-48; see also *Bemis v. State*, No. 123,659, 2022 WL 68337 (Kan. App. 2022) (unpublished opinion) (failure to consult expert on child interview techniques was conclusory because Bemis provided no factual basis to show interview was improperly conducted); *Hall v. State*, No. 109,168, 2014 WL 1096748, at *8 (Kan. App. 2014) (unpublished opinion) (no failure to consult expert on child interview techniques because victims were "subject to extensive cross-examination" and "the State did not emphasize . . . the correctness of the interviewing techniques").

Ricke's reliance on *Mullins* is misplaced. At Mullins' K.S.A. 60-1507 evidentiary hearing, the State presented no witnesses and engaged in "minimal cross-examination" of

Mullins' witnesses. 30 Kan. App. 2d at 712. As a result, the State failed "to provide the trial court any support for determining Mullins' trial counsel was effective." 30 Kan. App. 2d at 718. Further, the victim's testimony was bolstered by another witness testifying the victim had not been coached. 30 Kan. App. 2d at 718.

Instead, this case more closely resembles *Lewis*, *Hall*, and *Bemis.* Ricke has not provided a factual basis showing Shell's interviews of B.D. and S.D. were improper. B.D. and S.D. testified at trial, and their testimony was subject to cross-examination. The jury observed the victims' interviews with Schell and had the opportunity to compare the interviews to the trial testimony. Similarly, trial counsel challenged S.D.'s allegations primarily by pointing out that S.D. disclosed alleged abuse to his parents after hearing B.D. disclose allegations. Perhaps the most significant difference, however—unlike in *Mullins*, *Lewis*, *Hall*, or *Bemis*—is Ricke was acquitted of two of the four counts he had been charged with. A third count was dismissed following a mistrial. Ultimately, the jury only convicted Ricke of aggravated indecent liberties with a child.

After reviewing the record, trial counsel's failure to retain an expert witness on child interview techniques did not fall below an objective standard of reasonableness. Yet regardless of whether Ricke has met the first *Strickland* prong, based on the totality of the circumstances, Ricke has not shown trial counsel's failure to obtain an expert witness resulted in prejudice.

*Trial Counsel Was Not Ineffective for Failing to Point Out Inconsistencies in the State's Evidence*

Ricke claims trial counsel failed to challenge either S.D.'s or B.D.'s credibility in closing argument. He submits that trial counsel "did not point out all the inconsistencies in the evidence and the result of the proceeding would have been different had counsel explained what the jury should look for in assessing witness credibility."

14

The State counters that trial counsel pointed out specific inconsistencies in closing argument. The State also points out that the jury acquitted Ricke of two counts of aggravated sodomy and could not reach a verdict on the third count of aggravated sodomy.

In his K.S.A. 60-1507 motion, Ricke argued trial counsel failed to challenge the victims' credibility during closing argument. According to him: "Instead [counsel] merely implored the jury to 'consider carefully [S.D.]'s and [B.D.]'s testimony along with lack of evidence corroborating the[i]r version of events.'"

During closing argument, however, trial counsel pointed to several inconsistencies in the evidence, especially the inconsistencies in B.D.'s allegations. Trial counsel also argued that B.D. and S.D.'s claims were uncorroborated: "You have a boy who gets in trouble who makes allegations, makes them in front of his brother who also says, yeah, it happened to me. That's it. And every other piece of evidence that they whittled together is uncorroborated. It's not corroborated by anything." Trial counsel also noted that despite L.D.—S.D. and B.D.'s older brother— alleging Ricke told L.D. he had "bro sex" with B.D. and S.D., L.D. never reported what Ricke said to anyone. Ricke does not indicate what more trial counsel should have done to challenge S.D.'s credibility or what inconsistencies trial counsel should have pointed out.

In *Davis v. State*, No. 114,436, 2016 WL 5344256 (Kan. App. 2016) (unpublished opinion), another panel addressed a similar issue. There, Davis alleged trial counsel was ineffective for failing to impeach the victim's testimony with inconsistent statements. Davis listed "a handful of inconsistent statements" that counsel failed to point out, all stemming from the victim's forensic interview that the jury saw at trial. 2016 WL 5344256, at *9. The *Davis* panel concluded Davis failed to show trial counsel's performance was deficient. The panel noted that the jury saw the victim's interview and

observed any inconsistencies with her trial testimony. Additionally, the panel found trial counsel "thoroughly questioned" the victim on her allegations and on new details she added at trial. 2016 WL 5344256, at *9.

Here, Ricke does not identify any inconsistencies that trial counsel should have highlighted for the jury. The jury viewed both S.D.'s testimony and his interview and would have observed any inconsistencies. Furthermore, trial counsel elicited testimony that S.D. did not disclose any allegations until he heard B.D. disclose allegations to their parents. And, in closing argument, trial counsel pointed out that B.D. disclosed his allegations after getting in trouble with his parents, after which S.D. disclosed his allegations. Trial counsel emphasized that both boys' allegations were uncorroborated.

The jury acquitted Ricke of both counts involving B.D. and failed to reach a verdict on one count involving S.D. Thus, trial counsel was largely successful in highlighting inconsistencies and the lack of corroboration in the allegations. Ricke fails to show that trial counsel's performance was deficient in this regard or that, absent any deficiency, his trial would have gone differently.

*Trial Counsel Was Not Ineffective for Failing to Object to Jury Instruction No. 9 or the Verdict Form*

In his K.S.A. 60-1507 motion, Ricke alleged trial counsel improperly handled the jury instructions:

> "[Trial counsel] was asked if the jury instruction[s] were satisfactory to the defense by [the district court]. [Trial counsel] was handed a copy of said instruction[s]. [Trial counsel] then quickly flipped through the pages given him and asked if it was 'the usual' by [trial counsel]. The [prosecution] informed him it was. [Trial counsel] then informed the Judge that the instructions were fine. [Trial counsel] failed to be prepared by having read the jury instructions for Mr. Ricke's trial beforehand. If he had[, trial counsel] would

16

have known how the instructions read and been ready/able to object to any issues in it. As in No. 9 and its wording. [Trial counsel's] actions were not in Mr. Ricke[']s best interest and in turn benefited the State."

At the K.S.A. 60-1507 preliminary hearing, Ricke's counsel offered the following argument on the jury instruction issue: "Also, to a certain extent what effort was, in fact, put into preparing for the trial? . . . Whether or not the attorney had truly done any research on proposed jury instructions? To a certain extent, why he didn't—wasn't prepared to raise and meet certain objections?"

The State contends Ricke merely claimed in his motion that trial counsel was ineffective for failing to read and prepare for the instructions beforehand. According to the State, Ricke raises a different argument on appeal, framing his new argument as an attack on Instruction No. 9 and the verdict form.

Ricke replies that his K.S.A. 60-1507 motion claimed trial counsel was ineffective for failing to object to issues with Instruction No. 9 and the verdict form. Ricke notes that pro se pleadings are liberally construed and his claim should be interpreted as an ineffective assistance claim for failure to object to Instruction No. 9 and the verdict form.

Ricke listed a vague allegation in his K.S.A. 60-1507 motion that trial counsel was unprepared to object to Instruction No. 9 and its wording. He did not explain what objection trial counsel should have raised, and his counsel at the K.S.A. 60-1507 preliminary hearing likewise offered no specificity in this regard. On appeal, Ricke contends that trial counsel should have objected to the jury instruction's omission of the underlying act constituting aggravated indecent liberties. He also expands his argument to include trial counsel's failure to object to the related verdict form on the same grounds. He did not articulate this argument at the district court.

17

Generally, issues not raised at the district court cannot be raised for the first time on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). There are three exceptions to this rule: (1) The newly asserted theory involves only a question of law on proved or admitted facts and is determinative of the case; (2) consideration of the argument is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). An appellate court's decision to review an unpreserved claim is prudential. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

Ricke contends that if we construe his current claim as a new argument on appeal, we should review the issue as a question of law on proved or admitted facts or as necessary to serve the ends of justice. We agree and will address the merits of Ricke's claim.

Ricke claims trial counsel was ineffective for failing to object to the elements instruction on aggravated indecent liberties with a child and the related verdict form. He asserts including "S.D. touching penis" on the verdict form but omitting that language in the instruction was error. Ricke contends it was possible that some jurors found the required lewd fondling or touching for aggravated indecent liberties was the touching of S.D.'s penis while other jurors found the lewd act to be something else. He alleges that the outcome may have been different if the jury decided for itself whether lewd fondling or touching occurred instead of receiving a conclusion in the verdict form that the lewd act was touching S.D.'s penis.

The State replies that trial counsel submitted proposed instructions containing the same language as the instruction issued to the jury. The State notes that, on direct appeal, the *Ricke* panel found the instruction was proper considering the evidence.

18

Ricke appears to argue the State presented evidence of multiple acts that could have constituted aggravated indecent liberties with S.D. When reviewing such claims under an unlimited review, appellate courts first determine whether there was evidence of multiple acts supporting a given charge. If there were multiple acts, appellate courts determine whether the State properly elected the act for the jury to consider. If no election occurred, appellate courts then decide whether the error was harmless. *State v. Moyer*, 306 Kan. 342, 359, 410 P.3d 71 (2017).

In *Moyer*, the Supreme Court acknowledged it had "previously considered a prosecutor's opening statement and closing argument . . . the functional equivalent of an election by the State." 306 Kan. at 361. The *Moyer* court found no indication of jury confusion regarding specific acts for all but one charge where the State specified the alleged acts in its opening statement and closing argument. 306 Kan. at 361-62. But see *State v. Colston*, 290 Kan. 952, 969, 235 P.3d 1234 (2010) (finding State failed to elect act where prosecutor specified act in closing argument but failed to tell jury to agree on same underlying act or disregard evidence of other acts).

In this case, during closing argument, the State identified the aggravated sodomy charge as the anal penetration of S.D. The State identified the aggravated indecent liberties charge as Ricke allegedly "touch[ing] and rub[bing] on [S.D.'s] penis." The other two acts alleged—the digital anal penetration of S.D. and Ricke placing his mouth on S.D.'s penis—match the definition of sodomy rather than aggravated indecent liberties. See K.S.A. 2017 Supp. 21-5501(b) (defining "'[s]odomy'" in part as "oral contact of the male genitalia; anal penetration, however slight, of a male . . . by any body part or object.").

Even assuming this was a multiple acts case, the State properly elected the act for the jury to consider. In its opening statement, the State told the jury that the counts relating to S.D. consisted of Ricke "touch[ing] [S.D.'s] penis in a sexual way" and "an act

of anal intercourse . . . where [Ricke's] penis was placed into [S.D.'s] anus." Similarly, in closing argument, the State suggested the act of lewd fondling or touching required for aggravated indecent liberties occurred when Ricke "touched and rubbed on [S.D.'s] penis." See *State v. Garcia-Martinez*, 318 Kan. 681, 693, 546 P.3d 750 (2024) ("To ensure a unanimous verdict in such cases, the district court must give the jury a unanimity instruction or the State must elect the particular act it relies on for the conviction.").

As noted previously, Ricke does not explain what other act he believes the jury could have considered lewd fondling or touching to support the aggravated indecent liberties charge. Furthermore, the State elected the act of touching S.D.'s penis as the lewd touching necessary for aggravated indecent liberties with a minor in its opening statement and closing argument. Accordingly, there was no error in omitting the specific act in the elements instruction for aggravated indecent liberties. Ricke failed to show that trial counsel provided ineffective assistance of counsel by failing to object to the elements instruction or the verdict form.

*Appellate Counsel Was Not Ineffective for Failing to Raise Certain Issues or for Raising Issues Not Preserved for Appeal*

"To establish ineffective assistance of counsel on appeal, defendant must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful." *James*, 319 Kan. at 185.

1.     *Failure to Identify Constitutional Issues*

The State contends that, on appeal, Ricke expands upon the claim made in his K.S.A. 60-1507 motion regarding his appellate counsel's failure to identify constitutional issues. In his K.S.A. 60-1507 motion, Ricke alleged appellate counsel "failed to identify

Constitutional issues during direct appeal on Sufficiency of Evidence of Aggravated Indecent Liberties with [S.D.]." On appeal, he claims appellate counsel was ineffective for raising insufficiency of the evidence instead of arguing that the complaint was defective. The State is correct; Ricke raises a different argument on appeal than the argument he made at the district court.

Issues not raised at the district court generally cannot be raised for the first time on appeal. *Green*, 315 Kan. at 182. An appellant is required to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36).

Ricke does not acknowledge that he has expanded this argument on appeal. Neither his brief nor his reply brief explains why his argument should be considered for the first time on appeal. Therefore, we find this issue improperly briefed and deemed waived or abandoned. See *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Even considering the merits, however, Ricke is not entitled to relief.

Ricke asserts that appellate counsel was ineffective for failing to raise defective complaint as a violation of his rights to due process and notice under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under section 10 of the Kansas Constitution Bill of Rights. He claims that because the complaint did not contain the specific act alleged to constitute indecent liberties—touching S.D.'s penis—he "had no notice of any specific facts to support the charge he proceeded to trial on." Ricke contends this rendered him unable to plan his defense. He argues that the defective complaint was reviewable for the first time on appeal under either of the first two preservation exceptions. As a result, Ricke suggests appellate counsel was ineffective for raising insufficiency of the evidence without raising defective complaint.

The State responds that Ricke brings conclusory claims against appellate counsel without evidentiary support.

K.S.A. 22-3201(b)-(c) provides the required contents of a charging document:

"(b) The complaint, information or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, drawn in the language of the statute, shall be deemed sufficient. The precise time of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense. . . . The complaint, information or indictment shall state for each count the official or customary citation of the statute, rule and regulation or other provision of law which the defendant is alleged to have violated. Error in the citation or its omission shall be not ground for dismissal of the complaint, information or indictment or for reversal of a conviction if the error or omission did not prejudice the defendant.

"(c) When relevant, the complaint, information or indictment shall also allege facts sufficient to constitute a crime or specific crime subcategory in the crime seriousness scale."

Our Supreme Court has recognized three types of deficient charging documents: (1) The document violates the Kansas Constitution's requirement that charges be filed in the correct court and territory; (2) the document does not allege facts that, if proved beyond a reasonable doubt, show the commission of a crime; and (3) the document fails to provide the defendant due process and adequate notice of the charges. The first defect is a state constitutional error; the second is a state statutory error; and the third is a violation of state and federal constitutional rights. *State v. Dunn*, 304 Kan. 773, 815-16, 375 P.3d 332 (2016). A charging document satisfies due process and notice requirements if "'the defendant has an opportunity to meet and answer the State's evidence and prevent double jeopardy.'" *State v. Jordan*, 317 Kan. 628, 646, 537 P.3d 443 (2023).

When, as here, the defendant asserts the third type of charging document defect—raising due process and notice issues—the constitutional harmless error test established in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), applies for federal constitutional violations. *Dunn*, 304 Kan. at 817. The *Dunn* court assumed a "similarly stringent" test would also apply to state constitutional violations. 304 Kan. at 817. Under the *Chapman* test, an error "is harmless if the State proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Sherman*, 305 Kan. 88, Syl. ¶ 8, 378 P.3d 1060 (2016).

Count III of the complaint against Ricke alleged the following:

"[A]nd on or between the 1st day of October, 2017 A.D. and the 31st day of October, 2017 A.D., in the County of Sedgwick, and the State of Kansas, one JOHN R RICKE did then and there unlawfully engage in lewd fondling or touching of a child who was under fourteen (14) years of age, to-wit: [S.D.], eight (8) years of age, year of birth: 2009, or of the defendant by such child, who was not then married to JOHN R RICKE, done or submitted to with the intent to arouse or satisfy the sexual desires of the child, the defendant or both and JOHN R RICKE was 18 years of age or older at the time of the act."

Kansas defines aggravated indecent liberties with a child under the age of 14 as "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 21-5506(b)(3)(A).

In *State v. Price*, 30 Kan. App. 2d 569, 43 P.3d 870 (2002), a panel of this court considered a claim that the complaint failed to include the conduct involved in the charged offense. There, a jury convicted Price of one count of aggravated sodomy and

two counts of aggravated indecent liberties with a minor. The complaint listed the elements, the victim, and the time frame for each charge. At the preliminary hearing, the prosecutor clarified the alleged conduct for each charge. The victim also testified at the preliminary hearing about the alleged sexual acts. Before trial, the district court denied Price's request for a bill of particulars. On appeal, Price argued that "he was not adequately informed of the 'manner of means' by which these crimes were allegedly committed." 30 Kan. App. 2d at 572. The *Price* panel concluded that "[t]he charging document, together with the evidence presented at the preliminary hearing and obtained through discovery, provided Price with sufficient information to defend the charges against him." 30 Kan. App. 2d at 573.

Here, as in *Price*, the complaint listed the elements, the victim, and the time frame for count III. Similarly, at Ricke's preliminary hearing, Schell testified that S.D. alleged in his interview that Ricke grabbed his penis. During that hearing, Ricke asked for transcripts of the victims' interviews. The district court indicated that the State had "an open record file," and the State said it would provide those transcripts that day.

The State's factual allegations in the complaint against Ricke closely followed the definition of aggravated indecent liberties in K.S.A. 2017 Supp. 21-5506(b)(3)(A). As the *Dunn* court emphasized, K.S.A. 22-3201(b) provides that a charging document "'shall be deemed sufficient' if it is 'drawn in the language of the statute.'" 304 Kan. at 811. Therefore, the complaint in this case gave Ricke adequate notice of the charges he faced. Moreover, the record indicates that Ricke knew the facts the State sought to prove at trial. Accordingly, any deficiency in the complaint was harmless.

The complaint provided Ricke with adequate notice of the aggravated indecent liberties charge. Ricke fails to show either that appellate counsel's failure to raise this issue on direct appeal constituted deficient performance or that his appeal would have succeeded if appellate counsel raised this issue.

## 2.    *Failure to Cite Legal Authority*

Ricke asserts that appellate counsel was ineffective for failing to cite legal authority for the argument that the State's allegation in the complaint that Ricke and S.D. were not married "morphed" their marriage status into an element the State had to prove at trial. The State responds that Ricke's claims against appellate counsel are conclusory.

Count III of the complaint alleged that Ricke and S.D. were not married when Ricke committed aggravated indecent liberties against S.D. On direct appeal, Ricke claimed that "'[w]hile marriage is normally a defense, the State morphed the defense of marriage into an element of the crime by charging that [S.D.] and Ricke were not married.'" *Ricke*, 2020 WL 2781698, at *5. The *Ricke* panel found Ricke presented "a novel legal argument without providing any legal support for it." 2020 WL 2781698, at *5. The panel concluded that the complaint included "the appropriate statutory language" and the marriage language was surplusage that "did not transform the statutory affirmative defense into an element of the crime." 2020 WL 2781698, at *6.

Our Supreme Court recently assessed a similar ineffective assistance of counsel claim in *James*. There, James claimed his appellate counsel were ineffective for failing "to provide authority that would support a new standard for analyzing harmless error." 319 Kan. at 189-90. Without providing any authority for the argument, appellate counsel argued that the district court's failure to instruct on reckless homicide offenses was constitutional error and asked the Supreme Court to reconsider caselaw applying the statutory harmlessness test to such instruction errors. The Supreme Court found James' ineffective assistance claim "entirely speculative" and found James made "no showing either that there is authority to be found supporting his novel argument or that this court would be likely to adopt such a novel argument or that, if it did adopt the argument he proposed in his direct appeal, the result would have been different." 319 Kan. at 191.

25

Here, Ricke makes no showing that there is legal authority supporting the novel argument raised by appellate counsel on direct appeal. He similarly fails to show that if appellate counsel had provided legal authority, the *Ricke* panel would have been likely to adopt the argument. Indeed, the opposite is true. The panel concluded that because the elements of a crime are provided by statute, the State lacked authority to turn an affirmative defense into an element. 2020 WL 2781698, at *6. Consequently, Ricke fails to show that appellate counsel's performance was deficient in failing to cite legal authority for the novel argument raised on direct appeal.

3.      *Improperly Raising Unpreserved Issue*

Ricke contends that appellate counsel was ineffective for raising the constitutionality of K.S.A. 2024 Supp. 60-455(d) when it was inappropriate for appellate review. He claims he should receive an evidentiary hearing to determine why appellate counsel "raised an issue . . . that was not preserved in the district court and failed to raise other issues."

On direct appeal, appellate counsel argued: "'Under K.S.A. 60-455(d), character evidence regarding the defendant's sexual misconduct starts off as admissible for the State. But, under K.S.A. 21-5502(b), character evidence regarding the alleged victim's sexual conduct starts off as inadmissible for the defendant. This difference in starting points contravenes the due process protection of reciprocity.'" 2020 WL 2781698, at *6. Acknowledging the argument was unpreserved, appellate counsel asserted the claim was reviewable as either a question of law on undisputed facts and determinative of the case or as necessary to serve the ends of justice or prevent denial of fundamental rights. The *Ricke* panel found neither preservation exception applicable and declined to review the issue. 2020 WL 2781698, at *8.

Ineffective assistance of counsel claims in Kansas do not typically present claims for improperly raising an issue on direct appeal. Instead, most cases of this sort involve failure to raise an issue. See, e.g., *Miller v. State*, 298 Kan. 921, 932, 318 P.3d 155 (2014); *Calhoun v. State*, 56 Kan. App. 2d 185, 200-01, 426 P.3d 519 (2018).

The Mississippi Supreme Court, however, discussed a claim that appellate counsel should not have raised issues lacking merit in *Burns v. State*, 813 So. 2d 668 (Miss. 2001). The court disagreed with Burns' contention and found "that Burns has in no way shown that his appeal suffered by the fact that his attorneys raised issues which proved to be unsuccessful." The court concluded that, although those issues did not result in reversible error, "the decision to present them was not ineffective assistance of counsel." 813 So. 2d at 680.

Other courts have reached similar conclusions where defendants claimed ineffective assistance for improperly raising issues on appeal. See *State v. Victor*, 242 Neb. 306, 310, 494 N.W.2d 565 (1993) (finding defendant failed to allege "specific facts" supporting ineffective assistance claim for improperly raising issues); *Langford v. State*, No. 75825, 2019 WL 1440980, at *3 (Nev. 2019) (unpublished opinion) (finding defendant failed to show omitting claims raised by appellate counsel "would have led to a reasonable probability of a different outcome" on appeal).

Ricke claims—without providing factual support—that appellate counsel was ineffective for improperly raising an issue. Additionally, Ricke makes no showing that his appeal would have been successful if appellate counsel had not raised the constitutionality of K.S.A. 2019 Supp. 60-455(d). Therefore, Ricke fails to show that appellate counsel's performance was deficient in raising this issue on appeal or that he was prejudiced by appellate counsel's performance.

In conclusion, Ricke has not shown either trial counsel or appellate counsel provided ineffective assistance of counsel. The district court did not err in denying Ricke's K.S.A. 60-1507 motion.

Affirmed.

* * *

ATCHESON, J., concurring:  I agree with the ultimate conclusion my colleagues reach—the Sedgwick County District Court properly denied John Ray Ricke's motion for habeas corpus relief under K.S.A. 60-1507. The motion and the record in the criminal case taken together show Ricke has raised no viable grounds for challenging his conviction for aggravated indecent liberties with a child. I, too, would affirm.